### OLSEN v. NORTH PACIFIC LUMBER CO.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1900.)

#### No. 516.

1. MASTER AND SERVANT—FELLOW SERVANT—INCOMPETENCY—NEGLIGENCE.

In an action by an employé against a master for injuries alleged to have been caused by the incompetency and negligence of a co-employé, it is not erroneous for the court to make a distinction between incompetency and negligence, and to submit to the jury only the question of negligence, where the evidence was entirely directed to the manner in which such co-employé performed his work, and the knowledge of plaintiff and defendant in respect thereto.

2. SAME—SPECIAL RULES.

A sawmill owner cannot be charged with negligence for failing to direct one employed as sawyer by special rules to observe care towards an off-bearer engaged in certain work with him, and injured by his negligence, where the work was not complex, and there was no evidence that it was customary in sawmills to direct employés by special rules.

3. SAME—PRESUMPTIONS.

It is the master's duty to employ careful servants, and one accepting employment may assume that such duty has been performed in the selection of his fellow servants.

In Error to the Circuit Court of the United States for the District of Oregon.

E. Mendenhall and Watson & Beekman, for plaintiff in error.
Rufus Mallory, for defendant in error.

Before McKENNA, Circuit Justice, and ROSS and MORROW, Circuit Judges.

McKENNA, Circuit Justice. The parties were, respectively, plaintiff and defendant in the court below, and we will so designate them. The plaintiff sued to recover damages for injuries sustained in the sawmill of the defendant. The ground of action was the incompetency and negligence of one of the defendant's employés, to wit, one Riley Rearick, sawyer in its mill. The facts are substantially that at the time of the injury to the plaintiff the defendant conducted a sawmill in Portland, Or., and that one Riley Rearick and the plaintiff were co-employés, the one as sawyer, and the other as "second off-bearer." In the mill there was a certain main carriage and a cer-

tain pony carriage. By the former, logs were sawed into cants (logs in a certain stage of dressing), and by the latter the cants were sawed into lumber. The cants were removed from one carriage to another by means of a derrick and powerful machinery operated by steam. The derrick was situate between the carriages, and a chain, with hooks, was attached to it. It was the duty of Rearick, as sawyer, to operate the machinery which moved the derrick, and of the off-bearer to handle the hooks attached to the derrick, place them upon the cant when it was to be conveyed to the pony carriage, and remove them when the cant was in position on the carriage. The same derrick and hooks were used for both carriages. The operation was as follows: When a cant was to be placed upon the pony carriage, the "second off-bearer" (plaintiff) placed the hooks upon the cant. The sawyer started the machinery which lifted the cant, and it was swung around by the derrick, and by the aid of the off-bearers placed on the pony carriage. The hooks were then to be released by the "second off-bearer," and the carriage started towards the saw by the sawyer. In the language of a witness, "the operation consists in loading the cant on the carriage or wagon; it is nothing more or less than a wagon on wheels; and as soon as the cants are loaded, and the hooks taken off, why the wagon is ready to go. The next move is to start the wagon or carriage towards the saw for the purpose of sawing up the cant." The controversy between the parties hinges in part upon what notice and care this should have been done by Rearick. The plaintiff in error claiming that it should not have been done until he was seen to have been away from the carriage; the defendant in error claiming that it was proper to start the carriage if the hooks were released, and that they were released before Rearick started the machinery. It is conceded that the two employés were fellow servants, but it is contended that defendant in error is nevertheless chargeable because Rearick, the sawyer, was incompetent and negligent, and that the defendant employed him and retained him knowing him to be so.

We need not detail the evidence. There was testimony to the effect that Rearick had been employed by the defendant for two years continuously, and that he had had ten years' experience in a sawmill, and that he had been first employed on the main carriage, but took charge of the pony carriage as sawyer about two years before the injury to plaintiff. There was conflicting testimony as to the reputation of Rearick for carelessness and recklessness, but it was not shown that the defendant had actual knowledge of such reputation, or that the plaintiff had, except Rearick testified that he walked up to Olsen as soon as he was hurt, and asked him "how bad he was hurt," and he said, "You careless s—— of b——, I knowed you would do it."

On the instructions requested and refused, certain errors are based which present the following propositions: (1) That it was a question of fact for the jury to decide whether it was reasonably necessary for plaintiff's safety as "second off-bearer" that Rearick should have been charged by the defendant with the duty of paying atten-

tion to and looking out for him, and to give some signal or warning before starting or moving the carriage towards the saw, and that the court erred in refusing to so instruct the jury, and also erred in instructing "that there was no testimony in the case to show that there was any duty on the mill company to provide rules and regulations as to how the saw should be started; that the law enjoined upon Rearick to be careful, and the mill company could not make that any stronger than the law made it." (2) That incompetency was a question of fact, and that, besides, it was constituted of the habits of Rearick as well as of his knowledge, and that the court erred in assuming that there was no evidence of his incompetency, and submitting alone to the jury the fact of his negligence. (3) That the plaintiff was not chargeable with notice of Rearick's negligence from his general reputation, or of special acts of negligence, of which he was not shown to have knowledge.

1. The court made a distinction between incompetency, properly so called, and negligence. Of the former the court said there was no evidence. The latter was submitted to the jury as a question of fact. There is certainly a difference between the ability to perform work and negligence in performing it. This difference was recognized in the complaint. It was recognized in the evidence. The court was therefore justified in assuming it, and submitting the question to which the evidence was addressed. There was no conflict in the evidence of the experience of Rearick, and no question made of its sufficiency to make him skillful. The evidence was entirely directed to the manner in which he performed his work, and the knowledge of it by plaintiff and defendant. The distinction made by the court was therefore not erroneous.

2. The contention that the defendant should have directed Rearick as sawyer by rules and regulations to observe care to the plaintiff as off-bearer cannot be sustained. To observe such care was essentially Rearick's duty, assumed in and by his employment. The business was not complex. There was no evidence that it was customary in sawmills to direct employés by special rules, and it could not be so held as a matter of law or submitted to the jury to decide without evidence. In complex employments like railroads, rules have been held to be necessary. To require them in the simpler employments would only embarrass them without useful effect. Morgan v. Iron Co., 133 N. Y. 666, 31 N. E. 234.

3. The court instructed the jury, among other things, as follows:

"So, then, gentlemen, if Riley Rearick was a careless man, and if the company knew that he was a careless man, either from general reputation, or from notice of specific acts of carelessness coming to it, and if, being so careless, Riley Rearick was careless at the time of this accident, and the plaintiff was not himself careless at the time of the accident, was in the exercise of due care,—if you find all these things concurring,—then you may find a verdict for the plaintiff; otherwise, your verdict must be for the defendant."

The following colloquy took place between the counsel for the defendant and the court:

"Mr. Mallory: There was one qualification that was not given, which I think ought to have been given. Your honor said that if Riley Rearick had a reputation for being negligent, and the plaintiff knew of that reputation, he

could not recover; and your honor, I think, said, in regard to the company, that if he was negligent, and the company knew it, or had reasonable ground to know it. I think the same thing ought to apply to Olsen. Court: I say that proof of reputation is not enough to show that he was in fact negligent. The fact of his negligence must be shown by other testimony, but the reputation may be shown to prove notice to the company of the fact which is otherwise proved, namely, that he was a careless man. Mr. Mallory: And that would apply as well to the plaintiff as to the defendant. Court: Yes; I will say to the jury that, if the plaintiff had the same notice that the defendant had, the defendant having notice, then he would be himself negligent in going on and accepting the employment. He must be free from negligence."

We think that these instructions were erroneous. The law did not charge the same duty on the plaintiff in regard to Rearick as it did on the defendant. It is true that the rule is laid down as to both master and servant, in language of quite universal import, that they will be charged with all they know, and all that they ought to know,—all that they can, by the exercise of reasonable care, ascertain. Manifestly, the rule is addressed to, and is limited by, their respective duties and situations. It is a master's duty to employ careful servants. One accepting employment may assume that such duty has been performed in the selection of his fellow servants. This is the established rule, and manifestly it could not be if a servant is chargeable with the same obligation of inquiry as a master, and, from a constructive knowledge, deemed to assume the risk of the master's neglect. Under such a rule, what would become of the master's duty? There would be nothing substantial left of it. It would become a mere abstraction, without responsibility or penalty for its violation.

But a master is not an insurer. If he has exercised the care required by the law, he has fulfilled his duty, and servants take the risk of each other's acts. Each is bound to know the difficulties and hazards of his employment, and exert his faculties to protect himself. If he neglect this duty, he must bear the consequences. But what pertains to the master's duty he is not chargeable with, nor compelled to investigate its performance. This, we think, is a correct deduction from the cases, which are too numerous to recite or review.

Indeed, the principles which determine the liability of an employer to an employé have been so often considered that it is somewhat strange that the proposition involved in the pending controversy has not been explicitly decided. It was involved if not necessary to the decision in Gilman v. Railroad Corp., 10 Allen, 233. The case arose on account of injuries to a carpenter employed by the corporation, through the negligence of a switchman, also employed by it, and was presented on a statement by counsel. The relations of the parties to the corporation, and the circumstances of the accident, were stated, and it was said that the switchman, when first employed by the defendants, had the reputation where he lived of being a man of grossly intemperate habits, and an habitual drunkard, and while in their employment was drunk every night. The plaintiff, however, had no knowledge of the switchman or his habits until after the accident. The trial judge, doubting the sufficiency of the facts to justify a recovery, even if proved, reserved

the case for the determination of the whole court. Mr. Justice Gray delivered the opinion of the supreme judicial court, and after expressing the duty of a master to provide proper means and employ proper servants, and what on their part servants assume and risk, of the evidence in regard to the reputation of the switchman said:

"The evidence offered by the plaintiff at the trial was competent to show that the defendants knowingly, or in ignorance caused by their own negligence, employed an habitual drunkard as a switchman, and thereby occasioned the accident. Of the sufficiency of this evidence a jury must judge. If the plaintiff can satisfy them that such misconduct or negligence in the defendants caused the injury, and that he himself used due care, he may maintain his action."

The case was ordered to stand for trial, and the plaintiff recovered. On the second review by the supreme judicial court (13 Allen, 433), the point was made that the switchman's reputation and habits were as chargeable against the plaintiff as against the defendant, but it was refused recognition, because it was not raised in the trial court. Mr. Justice Gray said:

"The point taken at the argument, that the plaintiff could not recover because he either knew the habits or reputation of Shute, or was negligent in not learning them, was not taken at the trial, and cannot now be raised for the first time."

In Monahan v. City of Worcester, 150 Mass. 439, 23 N. E. 228, Gilman v. Railroad Corp. was cited from 13 Allen to sustain an exception to the refusal of the trial court to permit the plaintiff to show that the employé of the city by whose act the injuries for which the plaintiff sued were inflicted "was generally reputed to be infirm in the sense of sight and hearing and in physical strength." Mr. Justice Field, speaking for the court, said:

"The offer was made for the purpose of proving that the defendant either knew of these infirmities, or by the exercise of reasonable care would have known of them, if the jury found from other evidence that McLaughlin (the employé who caused the injuries) was infirm in these respects. For this purpose, in our opinion, the evidence was competent. A master is bound to use reasonable care in selecting his servants, and, if a person is incompetent for the work he is employed to do, the fact that he is generally reputed in the community to want those qualities which are necessary for the proper performance of the work certainly has some tendency to show that the master would have found out that the servant was incompetent, if proper means had been taken to ascertain the qualifications of the servant."

The necessary implication of the reasoning is that the evidence could not be used to show negligence in the plaintiff. For a like implication, see Railroad Co. v. Archibald, 170 U. S. 665, 18 Sup. Ct. 477, 42 L. Ed. 1188.

The court below permitted the jury, on the motion of the defendant, to view the scene of the accident, and to witness the sawmill in operation by Rearick and the other employés of the defendant. This is assigned as error. We are not prepared to say that a view of a scene of an occurrence may not include machinery in operation. To permit the operation of the machinery, however, by the persons whose care or skill or duty is in question, is seriously disputable; but, under the circumstances of this record, we do not consider it essential to pass on the point. Judgment reversed, and the case remanded, with directions to grant a new trial.