# Linderman *v.* Tennessee Coal, Iron & Railroad Co.

## *Injury to Servant.*

(Decided May 14, 1912.  58 South. 900.)

1. *Master and Servant; Injury to Servant; Fellow Servants; Superintendence.*—One who is charged with superintendence under subdivision 2, section 3910, Code 1907, does not cease to be a superintendent merely because he performs duties in the capacity of a fellow servant; he may act in a dual capacity, and his act while acting as a fellow servant may not be acts of superintendence for which the master is liable, but, where he negligently does or fails to do something involving superintendence, the act is one of superintendence, though he may at the same time have been engaged in the performance of duties of a fellow servant.

2. *Same; Fellow Servant.*—To render a master liable under subdivision 2, sec. 3910, Code 1907, for the negligence of an employee who has superintendence entrusted to him, while exercising superintendence, it must appear that the negligence occurred while such employee was in the exercise of superintendence.

3. *Same.*—Where an employee charged with the duty of holding a hammer against rivets being driven into holes by a pneumatic hammer held by another employee, was injured in consequence of a co-employee entrusted with superintendence so applying the pneumatic hammer as to cause the rivet to be struck too hard, such negligence was the negligence of a fellow servant for which the employee was not liable.

[Linderman v. Tennessee Coal, Iron & Railroad Co.]

APPEAL from Birmingham City Court.

Heard before Hon. WILLIAM M. WALKER.

Action by Clifton E. Linderman against the Tennessee Coal, Iron & Railroad Company. From a judgment for defendant, plaintiff appeals. Affirmed.

The complaint alleges that defendant was engaged in or about repairing railroad cars at or near the engines, in Jefferson county, Ala., and was using in said work a certain machine by which a hot rivet or bolt was being or to be driven in a hole in a piece of metal, to wit, a beam, and on said day, while plaintiff was in the service or employment of defendant, and engaged in or about said business of the defendant, said hot rivet or bolt came through said hole in said piece of metal and fell upon or against plaintiff while engaged in or about said work, injuring him (and his injuries are here set out). The first three counts then allege that it was on account of a defect in the condition of the ways, works, machinery, or plant; the first count alleging that the machine was defective, the second count that the beam was defective, and the third count that the rivet or bolt was defective. The fourth count alleges the negligence as follows: "That said hot rivet or bolt fell upon or against him on the occasion aforesaid, and he suffered said injuries and damages by reason and as a proximate consequence of the negligence of the person in the service or employment of defendant who had superintendence intrusted to him, whilst in the exercise of such superintendence, namely, said person, who on behalf of the defendant had superintended the plaintiff, and whose name is unknown to plaintiff, negligently, in the exercise of such superintendence, caused or allowed the plaintiff to suffer said injuries and damages by negligently causing or allowing plaintiff to suffer through the falling of said hot rivet or bolt upon or against him on

the occasion aforesaid." The fifth count alleges the same negligence, but sets forth the superintendent as W. E. Manning. The sixth count alleges that the superintendent, while acting within the line and scope of his duties, willfully, wantonly, or intentionally caused plaintiff to suffer said injury.

The plaintiff testified: That at the time he got hurt he was working for defendant at the structural shop on car repairing, and that he was bucking rivets. That to buck a rivet is to hold the maul against the rivet, while a man on the opposite side drives the rivet, and, in order to buck the rivet, the rivet is put in a hole, and the bucker's duty is to put a hammer against that and hold it, while the other man drives it with an air machine, and this other man is supposed to govern his air machine, until this rivet is plugged in the hole, with a very light stroke, so that the bucker can hold it. That the rivet is the same size as the hole, until it is swelled up on the end next to him. If the rivet is a five-eighths rivet, the hole will be one-sixteenth of an inch larger than that. The rivet is loose in the hole, and then the driver is compelled to hit a light stroke; only at the time plaintiff was hurt he did not. The plaintiff knows about this, because he has run the machines. That those rivets are driven with an air machine or an air hammer. That it is a large contraption, with a cylinder in it, with air in it, and the cyinder works back and forth, and that the man that works it can work it with as light a force as he wants to, and that it is worked with a light force until the rivet is plugged, and then he puts on more power and puts a head on it. That the man driving the rivet was plaintiff's boss, and plaintiff was under his instructions. That he was a foreigner, and plaintiff did not know his name. That plaintiff had orders from the assistant superintendent, the superintendent, and his fore-

man, Mr. Manning, and "we were to go to this car and drive rivets," and Mr. Manning says, "we are to do what the riveter says do, and he tells me to make preparation to put the rivets." That the man who runs the machine is boss of the man who holds the rivets, and he gives instructions and turns in the time for the night, "and I had instructions from him to do what I was doing at the time I was hurt. The instructions were that this carpenter was ready to do some work on this car, and we were to go down there and drive three or four rivets. He said, 'Come on!' to the gang. He did not speak directly to me. He told the heaters to take the forge down to heat a few rivets, and we went on down and drove the rivets. There wasn't but one stroke hit before he knocked it out." Plaintiff was underneath the car at the time he was hurt, and when the bolt was put in plaintiff barely touched it. He did not have a firm hold, and that he put his hammer there just as quick as he could in the position he was in, and that plaintiff and the other man could not see each other, and that plaintiff did not holler, "all right!" as he did not have time, and that the man working the air machine hit the rivet with the full force of air, and the rivet flew back and damaged plaintiff. It was also shown that plaintiff understood the duty of bucking rivets.

HARSH, BEDDOW & FITTS, for appellant. This case is controlled by and will be decided upon the authority of *Sloss-S. S. & I. Co. v. Austell,* 161 Ala. 419; but see also *T. C. I. & R. R. Co. v. George,* 161 Ala. 421; *Robinson M. Co. v. Tolbert,* 132 Ala. 465; *K. C. M. & B. v. Burton,* 97 Ala. 240; 181 Mass. 481; 51 C. C. A. 53; 99 C. C. A. 570.

PERCY, BENNERS & BURR, for appellee. Under the facts in this case the fellow servant of plaintiff was

engaged in manual labor in driving the rivet and not in carrying out the details of a particular work.—58 L. R. A. 48 and note; *Smith v. Pioneer M. & M. Co.,* 146 Ala. 233. Every case cited by appellant draws the distinction here contended for and makes it clear that the act complained of was that of a fellow servant while not engaged in superintendence.—2 LeB. 688; 32 N. E. 4; 50 N. E. 525.

ANDERSON, J.—The proposition cannot be doubted that simply because one who is charged with superintendence happens to engage in the discharge of the duties of a subordinate, or that are performed by one in the capacity of a fellow servant of the plaintiff, he does not thereby cease to be a superintendent. He may act in a dual capacity, and the things which he does or omits while acting as a fellow servant, and which are incident to the duties of same, are not acts of superintendence. On the other hand, if he negligently does or fails to do something involving superintendence, the act or omission would be one of superintendence, notwithstanding he may at the time of said act or omission be also engaged in performing the duties of a fellow servant; but to create a liability under subdivision 2 of section 3910 of the Code of 1907 it is not sufficient merely to show that the injury was caused by reason of the negligence of a person in the service or employment of the master or employer who had superintendence intrusted to him, but it must appear that the negligence occurred while the offending employee was in the exercise of such superintendence. "This is the plain requirement of the statute. If it were held to be enough to constitute a cause of action to show that a superintendent had been negligent, without reference to the nature and character of the act he was performing when negligence occurred,

then the effect would be to read the last clause of sub-division 2 out of the statute and give it no field of opera-tion. The negligence must be that of some agent or em-ployee who is in the exercise of superintendence, and to whose negligence in such exercise the disaster is traced." —*Smith v. Pioneer Co.,* 146 Ala. 234, 41 South. 475; *Drennen v. Smith,* 115 Ala. 396, 22 South. 442; *Dantzler v. DeBardeleben,* 101 Ala. 309, 14 South. 10, 22 L. R. A. 361; *Sloss Co. v. Green,* 159 Ala. 178, 49 South. 301.

The evidence in the case at bar shows that the plain-tiff's injury resulted from the act of the superintendent in applying the air so as to cause the hot rivet to be struck too quick or too hard, and that the negligence, if any there was, grew out of the action of the boss or superin-tendent while acting in the capacity of fellow servant to the plaintiff, and which did not involve any superinten-dence. "The employer is not answerable for the negli-gence of a person intrusted with superintendence, who at the time, and in doing the act complained of, is not exercising superintendence, but is engaged in mere man-ual labor, the duty of a common workman."—*Smith v. Pioneer Co., supra; Cashman v. Chase,* 156 Mass. 342, 31 N. E. 4; Dresser on Employer's Liability, § 62. The trial court did not err in giving the general charge for the defendant. The case of *Sloss-Sheffield S. & I. Co. v. Austell,* 161 Ala. 418, 49 South. 685, is not in conflict with this holding. There is not a full report of said case, but, as we construe the opinion, it fastened the lia-bility on the defendant as the result of negligence on the part of the engineer while exercising acts of super-intendence, in this: That he negligently ordered the plaintiff to prize the engine off of the "top center," know-ing that steam was left in or would get in the cylinder, and knowing that said engine would move rapidly the instant it was prized off the center. The gravamen of

the action seems to have been the negligence on the part of the engineer, a superintendent, in ordering the plaintiff to do a thing which would probably result in injury to him, and not any negligence on the part of the engineer growing out of a mere manual act of a common workman.

The judgment of the city court is affirmed.

Affirmed. All the Justices concur.