MAX FINEBERG, RESPONDENT, v. PUBLIC SERVICE RAILWAY COMPANY, APPELLANT.

Submitted July 3, 1919—Decided November 25, 1919.

Under the terms of the agreement under which the plaintiff was working at the time of the accident, he was not an employe of the defendant, nor was he a mere licensee. The position he accepted was akin to the relationship created and defined at common law in the law of bailments, to which the civil law applied the term of *mandatum*, in which the relationship is created by agreement, but is substantially gratuitous, and in this situation the defendant was under the legal obligation to exercise due care under the circumstances surrounding the accident.

On appeal from the Hudson County Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices MINTURN and BLACK.

For the respondent, *Charles M. Egan.*

For the appellant, *Lefferts Hoffman, Leonard J. Tynan* and *George H. Blake.*

The opinion of the court was delivered by

MINTURN, J. The plaintiff on May 8th, 1918, signed an application for an appointment as conductor, in which application he stated "I hereby make application for a position as conductor in the service of the Public Service Railway Company with the full understanding that in the event of my securing employment I am to abide by such rules and regulations governing the employes as the management may from time to time establish. If employed I promise to loyally and faithfully serve the company," &c. He was then and there sent to the school of instruction which he attended for three days and then left.

On June 17th, 1918, the plaintiff signed defendant's agreement "that the Workmen's Compensation act shall govern the parties in any relation of employer and employe into which they have or may enter."

During the entire day he was under the instructor upon a trolley car, and during the time he was being instructed as a conductor, he was paid nothing. There was no arrangement made with the company, through which he was to be paid anything. On the third day about five-thirty P. M., while being instructed, he was in a car going from Jersey City to Newark, and while he was nearing a switch, the car going at a high speed jumped the track and overturned, pinning plaintiff under the rear platform. For the injuries thus sustained he obtained a verdict at the Circuit, and the result of that trial is before us upon exceptions.

The plaintiff was not appointed a conductor at the time of the accident, and was receiving no compensation for the time during which he was being instructed in the duties of a conductor. The ten dollars bonus which he was to receive was entirely conditioned upon the fact that if after instruction, he were found to be competent, and should receive his appointment as conductor, and remain in the employ of the company for thirty days, the bonus would be paid to him.

It is therefore clear that the plaintiff was not an employe of the defendant at the time of the accident, and the State Compensation act therefore does not apply to him. But two

questions are before this court, presented by the defendant's grounds of appeal, viz.: The refusal of the court to grant defendant's motion for a nonsuit; and the refusal of the court to grant defendant's motion for a direction of a verdict in its favor.

The motion for nonsuit was based upon three grounds:

*First.* That at the time of the happening of the accident, plaintiff was in the employ of the defendant, and was controlled by the compensation act.

*Second.* That the plaintiff was engaged in a common enterprise of service in the employ of the defendant, and

*Third.* That the plaintiff was a licensee, and not an invitee upon defendant's car.

The solution of the entire inquiry thus presented, it will be observed, is dependent upon the legal status occupied by the plaintiff at the time of the accident. Manifestly he was not in the defendant's employ, because his employment obviously was dependent and conditioned upon his qualification to serve under instructions then being extended to him. The relation of master and servant therefore is not the determining rule of liability.

*Phillips* v. *Library Co.,* 55 *N. J. L.* 307, and the cases following it in which the doctrine applicable to licensees is discussed, make it manifest that the doctrine there enunciated has no application, except in those cases where the effort is to distinguish between the status of a trespasser, to whom no duty involving care is owing, and one who by permission, express or constructive, enters upon the *locus in quo,* to whom as licensee the only duty owing is to refrain from acts willfully injurious. *Duel* v. *Mansfield Plumbing Co.,* 86 *N. J. L.* 582; *Guinn* v. *D. & A. Tel. Co.,* 72 *Id.* 276; *Coyne* v. *P. R. R.,* 87 *Id* 257; *Tronto* v. *Reo Motor Co.,* 92 *Id.* 595.

That the situation here presented involves more than the possession of a mere license, which usually inures only to the benefit of the licensee, without any reciprocal benefit to the licensor, must be obvious from the fact that a tentative or conditional agreement existed between the parties, which was expected by its terms to ripen into a contract of service,

mutually beneficial to both, and from which would be finally evolved, the legal status of master and servant.

Such a situation manifestly presents a case of mutual express invitation, where benefit from the relationship thus created is to inure to both parties, not unlike the relationship created and defined at common law in the law of bailments by Lord Holt in *Coggs* v. *Bernard,* 2 *Ld. Raym.* 909, and subsequently emphasized by Judge Story in his work on *Bailments,* and to which the civil law applied the term *mandatum,* in which the relationship is created by agreement, but is substantially gratuitous or without consideration.    2 *Street Leg. L.* 278.

Chancellor Kent, in treating of the care required in such a situation, quotes Sir William Jones as authority for the rule, that, the mandatory is "bound to use a degree of diligence and attention adequately to the performance of his undertaking."    2 *Kent Com.* 570.

This statement manifestly is but an elaboration of our modern definition of due care under the circumstances; and thus Chancellor Kent further elaborating the doctrine says, "It is conceded in the English as well as by the Roman law, that if a party makes a gratuitous engagement, and actually enters upon the execution of the business, and does it amiss, through the want of due care, by which damage ensues to the other party, an action will lie for this misfeasance."    *Ibid.*

This court in *Labrasca* v. *Hinchman,* 81 *N. J. L.* 367, was called upon to determine the liability of a landlord, who without legal obligation so to do, undertook the repair of the demised premises from which act damages resulted to the tenant.    In that case we reviewed the question now presented, and the rule there enunciated was similar to the common law declaration, involving gratuitous bailments to which we have adverted.    The rule thus applied is similar in legal import and doubtless for similar reasons, to the rule invariably applied to cases involving an invitation, where the benefit resulting to the parties involved in the transaction is concededly reciprocal.

Thus the owner of a store or business or public house holds out a constructive invitation to the public to enter and to trade with him. This invitation implies an undertaking to exercise care for the visitor or invitee while upon the premises, commensurate with the situation and the circumstances surrounding the *locus in quo,* over which the invitee has no power of control, and presumably unless the danger be obvious, no knowledge of existing danger. Cases of that general character are illustrated, *inter alia,* by *Schnatterer* v. *Bamberger Co.,* 81 *N. J. L.* 558; *Higgins* v. *Goerke-Krich Co.,* 91 *Id.* 464; *Cooper* v. *Reinhardt, Id.* 402; *MacDonough* v. *Woolworth Co., Id.* 677.

In either aspect of the situation the defendant was under the legal obligation to exercise due care under the circumstances, and to the jury in this instance was properly committed the solution of that issue of fact.

The judgment under review will therefore be affirmed, with costs.