(102 So. 906)

## REED v. RIDOUT'S AMBULANCE, Inc.
### (6 Div. 43.)

(Supreme Court of Alabama.   Jan. 22, 1925.)

**1. Master and servant ⊕==88(1)—Essentials of relation, stated.**

Essentials of relationship of employer and employé are voluntary rendition of service, its acceptance by employer, and employer's right to direct and control employé; payment of compensation being merely incidental thereto.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Master and Servant.]

**2. Master and servant ⊕==88(1)—Vocational student under federal War Risk Insurance Act held "employé" and injured by negligence of fellow servant.**

Vocational student of embalming under federal War Risk Insurance Act (U. S. Comp. St. § 514a et seq.), held "employé" while learning business, so that injuries suffered while riding in employer's ambulance through driver's negligence resulted from negligence of fellow servant with whom he was engaged in common enterprise.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employé.]

**3. Master and servant ⊕==361—In action for compensation relation is based on definition in Workmen's Compensation Act.**

In action for compensation under Workmen's Compensation Act, existence of relation of employer and employé is based on definition in Gen. Acts 1919, p. 237, § 36.

**4. Master and servant ⊕==361—Definition of "employer" and "employé" in Compensation Act does not affect common-law relation.**

Definition of "employer" and "employé" contained in Workmen's Compensation Act (Gen. Acts 1919, p. 237, § 36) does not affect common-law relation.

**5. Master and servant ⊕==190(4) — Assistant manager of ambulance company held fellow servant while driving ambulance.**

Assistant manager of ambulance company, who had authority to direct employés, was acting merely as plaintiff's fellow servant while driving ambulance in which plaintiff was riding when injured in collision.

**6. Negligence ⊕==119(7)—Defendant held entitled to peremptory instruction on allegation plaintiff was invitee, proof showing employment.**

Where evidence showed defendant's employment of plaintiff, defendant was entitled to

peremptory instruction as to allegations of complaint that plaintiff was riding in defendant's ambulance as invitee.

**7. Master and servant ☞330(3) — Evidence held insufficient to sustain charge of wanton injury by employé of corporation.**

Evidence *held* insufficient to sustain charge of wanton injury to plaintiff while riding in defendant corporation's ambulance operated by one of its servants,

**8. Trial ☞171—Giving affirmative charge with hypothesis held no impediment to its withdrawal and giving of peremptory charge.**

Giving affirmative charge with hypothesis *held* no impediment to its withdrawal and giving of peremptory charge, where necessary evidence to support plaintiff's case was lacking.

**9. Trial ☞108—No right to argue to jury after peremptory instruction.**

Peremptory instruction leaves nothing for jury to consider, their only duty being to sign verdict as directed, and there is no right to argue to jury.

**10. Trial ☞325(1)—No right to poll jury in case of directed verdict.**

There is no right to poll jury in case of directed verdict, and when poll was taken its result was properly disregarded.

**11. Pleading ☞245(3)—Trial ☞66—Plaintiff held entitled to amend complaint during trial, but reception of additional testimony discretionary with court.**

Under Code 1923, §§ 9490, 9513, plaintiff was entitled to amend complaint by adding new counts during progress of trial, but it was discretionary with court whether additional testimony should be received.

**12. Master and servant ☞258(18) — Count for injuries while riding in ambulance held defective in not showing duty.**

Count alleging that plaintiff was injured while riding in employer's ambulance, and relying on employer's failure to make rules as to speed of ambulance as a breach of duty, without alleging facts showing defendant's duty to plaintiff, *held* defective.

**13. Master and servant ☞141 — Employer's duty to adopt rules, stated.**

It is employer's duty to safeguard employés in complex and dangerous work by adoption of proper rules, but this does not apply to work simple and free from complexities.

**14. Master and servant ☞141—Driving ambulance held not susceptible to employer's control by rules limiting speed.**

Driving ambulance *held* not susceptible to employer's control by adoption of rules limiting its speed, and hence employer owed no duty to fellow servant of driver to adopt rules.

**15. Master and servant ☞131—Ordinances limiting speed of motor vehicles not protection of employés.**

Ordinances or statutes limiting speed of motor vehicles are for benefit of the public, and their violation is not actionable in favor of employés of offending corporation.

**16. Master and servant ☞256(3)—Complaint for injuries to employé riding in employer's ambulance held defective in not alleging service.**

Complaint, alleging that plaintiff was injured while riding in employer's ambulance, *held* defective for failing to allege that employé was engaged in any service when injured.

**17. Negligence ☞22½ — Complaint held to show plaintiff riding in defendant's ambulance was mere licensee.**

Allegation of complaint that plaintiff was riding in defendant's ambulance with defendant's consent *held* to show that plaintiff was mere licensee to whom defendant's only duty was not to cause willful injury.

Appeal from Circuit Court, Jefferson County; Joe C. Hail, Judge.

Action for damages for personal injuries by Walter R. Reed against Ridout's Ambulance, Incorporated. Judgment for defendant, and plaintiff appeals. Affirmed.

The original complaint was in two counts, for simple negligence and willful and wanton injury; the allegations in each count being that plaintiff was injured by the misconduct of one Lawrence Ridout, acting as defendant's servant or employé, in the scope of his employment, while driving defendant's ambulance, in which plaintiff was riding at the time as an invitee of defendant. The specific misconduct charged in count 1 is that Ridout negligently drove the ambulance into a post or other obstruction; and in count 2 that he willfully and wantonly so drove it, well knowing that it would probably injure plaintiff.

A demurrer to these counts being overruled, defendant pleaded the general issue and several special pleas. Plea 2 sets up that plaintiff was an employé of defendant, so engaged at the time of his injury; that Ridout was a fellow servant of plaintiff; and that the injury complained of resulted from the negligence of a fellow servant. Plea 3 sets up the facts that the ambulance in which plaintiff was thus riding was going in the regular course of business to answer an emergency call to go and transport a dangerously wounded person to a hospital; that plaintiff entered the ambulance to go on said call, knowing its nature, and that the car would be driven at a high rate of speed; that the accident happened as the result of its being driven at a high rate of speed on the public streets; and that, knowing the danger, plaintiff negligently remained in the car without warning or protest to the driver.

The case went to trial on counts 1 and 2, and the general issue; and on pleas 2 and 3 as answer to the simple negligence count. When the evidence was completed and the

arguments begun, the trial judge indicated that he would give the general affirmative charge for defendant on the theory that the evidence showed that plaintiff was an employé of defendant and not an invitee, as alleged. Thereupon, plaintiff obtained permission to file additional counts to his complaint numbered 3 to 13, inclusive. A demurrer was sustained to each of these counts except 9, which alleges:

"Defendant wantonly injured plaintiff, in that said defendant wantonly drove an ambulance in which plaintiff was riding at such a wanton speed as to cause same to run into a pole, and proximately causing plaintiff to be injured, as alleged in count 3."

Plaintiff was not allowed to introduce any additional evidence, to which denial he duly excepted.

The evidence showed that plaintiff was a partially disabled soldier who had become a vocational student under the War Risk Insurance Act of the federal Congress (U. S. Comp. St. § 514a et seq.), receiving from the government a pension of $100 a month while training for a vocation. He entered defendant's undertaking and embalming establishment about January, 1922, for the purpose of learning the business of embalming, and remained in that service until he was injured in September, 1922, except for a six weeks' absence at a New Orleans school in the summer. As to his relation to defendant, plaintiff testified as follows:

"I disremember the dates I went in Ridout's ambulance as a vocational student. * * * The people up there had control and direction over me, according to the terms I made, and they told me when I first entered the office. I didn't have anything particular to do. We went out on ambulance calls. I'd go to the embalmer when he called me. When we went after a body I would assist and go with them. He would drive the ambulance himself, Mr. Ridout or whoever was there, and we would come back to the morgue. If we had a call to make to some residence or to the hospital, we would get the patient and take him, and when it came to sweeping up and things like that we would do that. I would sweep out the office and clean the rooms and do anything and attend to anything that they told me to. Mr. Ridout didn't pay me anything. My condition was that I was getting training—I was wounded in the left leg."

On cross-examination he further testified:

"I roomed at Mr. Ridout's, in the shop we call it, and took my meals out. * * * Ridout furnished the usual accommodations with room; that is, bedclothes, linen, etc. I did a little of everything while I was at Ridout's that comes handy in the profession, a lot of work you do that is not concerned with your getting your training, such as sweeping out and things like that. * * * I did everything that they asked me to do."

As to the particular service he was engaged in when injured, plaintiff testified:

"I received the call for the ambulance that afternoon myself. * * * When I went out there, I told Mr. Lawrence Ridout to go to Sixth and Twenty-Sixth right away; something or other had happened. * * * I got in (in) a pretty big hurry and said, 'Let's go.' Mr. Lawrence Ridout was driving."

The evidence shows that as the car was approaching Twenty-Sixth street it was going at about 20 miles an hour; that the driver, Ridout, applied the brakes at Twenty-Fifth street, and the car was slowing down, but the brakes gave way and failed to hold, and the car ran about a block out of control; that on Twenty-Sixth street a truck was in its path, and a pedestrian came from behind it, and to avoid striking him the driver turned the car in towards the curb and ran into a post, resulting in the collision and injury complained of.

Lawrence Ridout was assistant manager of defendant corporation's business, and had authority to supervise and direct plaintiff as to his services. Defendant employed 16 persons in its business.

The trial judge gave the defendant the general affirmative charge with hypothesis, and the jury after retirement came back and asked for further explanations as to the meaning of the charge. After some discussion, that charge was withdrawn, and a peremptory instruction was given to find a verdict for defendant. Responsive to this instruction, the jury brought in a verdict for defendant and plaintiff demanded a poll of the jury, which was objected to by defendant's counsel. The poll was made, however, and eleven of the jurymen stated it was not their verdict, but was given under the compulsion of the judge's instruction. The verdict was received over plaintiff's objection, and judgment was rendered thereon for defendant.

Black, Harris & Foster, of Birmingham, for appellant.

A vocational student of the government is not an employé of the company from whom he is receiving training. Acts 1919, p. 237, § 36; Ex parte W. T. Smith Lbr. Co., 206 Ala. 485, 90 So. 807; Fineberg v. Public Service R. Co., 94 N. J. Law, 55, 108 A. 311; Wilkes v. Buffalo Co., 216 Pa. 355, 65 A. 787; Goehring v. Beaver Valley Tr. Co., 222 Pa. 600, 72 A. 259. An invitee is a person present for the mutual benefit of himself and the one extending the invitation, and he may recover for negligence. Sou. Ry. v. Bates, 194 Ala. 78, 69 So. 131, L. R. A. 1916A, 510; 29 Cyc. 454; Galloway v. Perkins, 198 Ala. 658, 73 So. 956; Perkins v. Galloway, 194 Ala. 265, 69 So. 875, L. R. A. 1916E, 1190; McGeever v. O'Byrne, 203 Ala. 266, 82 So. 508. Plaintiff and the driver were not fellow servants. Lookout Mt. Iron Co. v. Lea, 144 Ala. 169, 39 So. 1017. Where a master is engaged in a dangerous business, he must promulgate

rules for the government of such business and his employés. 26 Cyc. 1157; Woodward Ir. Co. v. Lewis, 171 Ala. 233, 54 So. 566; 18 R. C. L. 573; L. & N. v. York, 128 Ala. 305, 30 So. 676; Sloss Co. v. Capps, 200 Ala. 610, 76 So. 968. The jury may be polled on requirement of either party; and if they answer that it is not their verdict, they must be sent out for further deliberation. Code 1907, § 7317; 38 Cyc. 1853; 27 R. C. L. 840. It was error to direct a verdict in this case. Penticost v. Massey, 201 Ala. 261, 77 So. 675; Shipp v. Shelton, 193 Ala. 658, 69 So. 102. The relation of master and servant grows out of contract between the parties. Buckalew v. T. C. I. Co., 112 Ala. 156, 20 So. 606.

Cabaniss, Johnston, Cocke & Cabaniss, of Birmingham, for appellee.

Although no compensation be paid, the relation of master and servant may yet exist. 18 R. C. L. 495; Huntzicker v. Ill. Cen., 129 F. 548, 64 C. C. A. 78; A., T. & S. F. v. Fronk, 74 Kan. 519, 87 P. 698, 11 Ann. Cas. 174; Barstow v. Old Colony, 143 Mass. 535, 10 N. E. 255; Rief v. Great Northern, 126 Minn. 430, 148 N. W. 309; Pettee v. Noyes, 133 Minn. 109, 157 N. W. 995; Cayll v. Waukeska Gas & Electric Co., 172 Wis. 554, 179 N. W. 771; Goehring v, Beaver Valley T. Co., 222 Pa. 600, 72 A. 259; Illinois Cent. R. Co. v. Johnston, 205 Ala. 1, 87 So. 866. There is no duty to adopt rules imposed upon the master, where the business is neither complex nor extrahazardous. 26 Cyc. 1157; 18 R. C. L. 573; Zebrowsky v. Warner Sugar Ref. Co., 83 N. J. Law, 558, 83 A. 957, 46 L. R. A. (N. S.) 233; Corrigan v. New Dells Lbr. Co., 154 Wis. 586, 143 N. W. 666, 48 L. R. A. (N. S.) 466; 3 Labatt, §§ 903, 1115. Negligence of a coemployé, even of a superior grade, is not negligence of superintendence, avoiding the application of the fellow servant doctrine, where the alleged negligent act consisted of mere physical handling of the instrument. Dantzler v. Debardeleben C. & I. Co., 101 Ala. 309. Where there is no evidence to support the plaintiff's case a directed verdict is proper. 38 Cyc. 1580; C. & W. v. Wood, 86 Ala. 164, 5 So. 463; Yates v. Huntsville Co. (Ala. Sup.) 39 So. 647; Jarrell v. Birmingham W. W. Co., 179 Ala. 503, 60 So. 835; McGhee v. Birmingham News Co., 206 Ala. 487, 90 So. 492. There is no right to poll the jury in the case of a directed verdict. 38 Cyc. 1589.

SOMERVILLE, J. The question of controlling importance in this case is whether the plaintiff at the time of his injury was riding in the defendant's truck by invitation merely, or whether he was an employé of defendant and was riding in the truck in the course of his employment and service.

Counsel for plaintiff conceive and insist that, because he was a "vocational student," serving without pay, and for the purpose solely of learning the business of embalming, he was not a servant or employé of defendant in any legal sense, and hence that the legal incidents of such a relation did not attach—thereby avoiding defendant's theory of nonliability based on the fellow-servant doctrine of the common law. A further contention of plaintiff's counsel is that even though it were conceded that the facts in evidence establish the common-law relation of employer and employé, yet, under the definition of "employé" found in our Workmen's Compensation Act (Gen. Acts 1919, p. 237, § 36), plaintiff cannot be held to have been an employé.

[1] As a general proposition, it may be sufficiently accurate to define an "employé" as one who performs services for another for wages or hire; and some judges and lexicographers have thus defined it—aptly enough for ordinary cases, but inaccurately as a test of the legal relation of employer and employé with respect to their obligations and liabilities, whether to third persons or to each other.

The payment of compensation is an incident of the relation merely, and not one of its essentials. The essentials are: The voluntary rendition of service by the employé; its acceptance by the employer; and the employer's right to direct and control the employé. I Labatt's Master & Servant, 9, § 2, and the numerous definitions therein quoted. Id., 56, § 18. As Mr. Labatt observes:

"One person may stand in the relation of master to another, although the former does not compensate the latter for his services. But the fact that the person who performed the work in question was or was not paid for his labor by another person tends more or less strongly to prove that the latter was or was not the master of the former. Elements of a less ambiguous quality, however, are commonly supplied by the testimony in cases of the type here under consideration; and it will be found that the payment of wages by one person or another has usually been viewed either as a merely corroborative circumstance, or as a circumstance to be disregarded, supposing the remainder of the testimony to point to a conclusion different from that indicated by it." Id., 60, § 19.

Among the cases cited by the author, three are cases of "student" workmen serving without pay, and solely for the purpose of learning the master's business: Huntzicker v. Ill. Cen. R. Co. (1904) 64 C. C. A. 78, 129 F. 548 (student flagman); Weisser v. So. Pac. R. Co. (1906) 148 Cal. 426, 83 P. 439, 7 Ann. Cas. 636 (student brakeman); Millsaps v. Louisville, etc., Ry. Co. (1891) 69 Miss. 423, 13 So. 696 (student fireman). These cases are, as to the facts of relationship, practically identical with the instant case. Other "student" workmen cases, in line with the foregoing, are Atchison, etc., R.

Co. v. Fronk, 74 Kan. 519, 87 P. 698, 11 Ann. Cas. 174; Norfolk, etc., R. Co. v. Boudurant's Adm'r, 107 Va. 515, 59 S. E. 1091, 15 L. R. A. (N. S.) 443, 122 Am. St. Rep. 867; Rief v. Great Nor. Ry. Co., 126 Minn. 430, 148 N. W. 309. See, also, in accord as to the full employé status of one working under the employer's control though without compensation, Barstow v. Old Colony R. Co. (1887) 143 Mass. 535, 10 N. E. 255; Johnson v. Ashland Water Co., 71 Wis. 553, 37 N. W. 823, 5 Am. St. Rep. 243; Aga v. Harbach, 127 Iowa, 144, 102 N. W. 833, 109 Am. St. Rep. 377, 4 Ann. Cas. 441. These cases hold also that such an employé cannot recover for an injury resulting from the negligence of a fellow servant.

[2] Our own case of A. G. S. R. R. Co. v. Burks, 148 Ala. 113, 41 So. 638, though analogous, is not strictly in point, since there it was understood that the railroad company was to give employment to the "student" brakeman when he had qualified himself for the position he was learning to fill. However, we think the law is too well settled, both on principle and authority, to permit of further controversy; and our conclusion must be that on the undisputed evidence, including the testimony of plaintiff himself, plaintiff was an employé or servant of defendant, and was, when injured, engaged in that service in a common enterprise with a fellow servant, through whose negligence he was injured—if negligence there was. This is based upon the plaintiff's own evidence and does not depend upon any plea or evidence presented by defendant.

The case of Fineberg v. Public Service Ry. Co., 94 N. J. Law, 55, 108 A. 311, is not in point, and its holding is not in conflict with the above-cited cases. There the plaintiff was injured while on a trolley car operated by the defendant, and while being instructed how to serve as its conductor by one of defendant's employés. He was not serving the defendant in any sense, and the conditions necessary to establish the relation of employer and employé were wholly wanting.

In the case of Wilkes v. Buffalo R. & P. Ry. Co., 216 Pa. 355, 65 A. 787, also cited and relied on by counsel for plaintiff, the plaintiff who had been a locomotive engineer on the defendant's road, had qualified himself for expected employment as such an engineer on a special division of the defendant's road by making a number of trips over that division, during which he received pay. Having thus qualified himself and stood his examination, he voluntarily and unnecessarily—though with the defendant's permission—made another trip out on the engine "learning the road." The court held that he was not in the service of the company while thus riding and observing, any more than if he had been sitting in a passenger car. As in the Fineberg Case, supra, the elements of service were wholly wanting.

In Goehring v. Beaver Valley Trac. Co., 222 Pa. 600, 72 A. 259, the plaintiff was a borough policeman, and rendered services to the defendant company by riding on its cars and preserving order. On the occasion of his injury there had been no disorder and no duties to perform, and he was riding back on the platform with the motorman. He was entitled to free transportation as an employé (as was the plaintiff in the Wilkes Case, supra), and it was left to the jury to determine whether his presence on the car at the time was in the capacity of employé or passenger.

The point of decision in both of these Pennsylvania cases was rested upon the proposition that an employé entitled to transportation, and exercising the right while not in service, is entitled to protection as a passenger; and, if the facts are equivocal, his status is a question of fact for the jury.

[3] In actions for compensation under our Workmen's Compensation Act, the existence of the relation of employer and employé must, of course, be based upon the definition of that relation as prescribed by the act (Gen. Acts 1919, pp. 206, 237, § 36). The language is:

"The term 'employer' as used herein shall mean every person * * * who employs another to perform a service for hire and to whom the 'employer' directly pays wages. * * * The term 'employé' * * * shall be construed to mean * * * every person * * * in the service of another under any contract of hire, express or implied, oral or written. * * *"

See Ex parte W. T. Smith Lumber Co., 206 Ala. 485, 90 So. 807.

[4] The limitations connoted in these definitions are, however, appropriate only for the purpose and operation of the act, and do not affect the common-law relation of employer and employé, with which alone we are here concerned.

[5] It is true that the evidence showed that Lawrence Ridout, the driver of the car, was the assistant manager of the defendant company, and had authority to direct plaintiff in the course of his service. But that is immaterial here, since on this occasion Ridout was not exercising any authority but was performing the purely menial service of driving the ambulance. Dantzler v. DeBardeleben C. & I. Co., 101 Ala. 309, 316, 14 So. 10, 22 L. R. A. 361.

[6] As to the several counts of the original complaint, grounded on the theory that plaintiff was in the ambulance as an invitee, it is clear that defendant was entitled to a peremptory instruction in its favor.

[7] As for the ninth count, the evidence wholly fails to support the charge of wanton injury to plaintiff, and, indeed, entirely refutes it. Moreover, the count charges a direct corporate act—an act by the corporation and not by one of its servants, and there

is nothing in the evidence tending to show direct corporate participation in the alleged wrongful act. City Delivery Co. v. Henry, 139 Ala. 161, 34 So. 389; Ex parte L. & N. R. R. Co., 203 Ala. 328, 83 So. 52.

[8] The fact that the trial judge first gave for defendant the affirmative charge with hypothesis was no impediment to the withdrawal of that charge and the giving of a peremptory instruction, the necessary evidence in support of plaintiff's case being essentially lacking. Gary v. Woodham, 103 Ala. 421, 15 So. 840; Cowen v. Eartherly Hdw. Co., 95 Ala. 324, 11 So. 195.

[9] Had the former charge stood, it would have been the right of counsel to argue to the jury the issue of fact submitted to them, viz., the credibility of the evidence. Brown v. Mobile Elec. Co., 207 Ala. 61 (9), 91 So. 802. But when, as in the case of a peremptory instruction, no issue is submitted to the jury, and their bounden duty is to render a verdict according to the instruction, there is obviously nothing to be argued. Dorough v. Ala. Power Co., 200 Ala. 605, 76 So. 963; 38 Cyc. 1589. Certainly counsel could not, consistently with their own duty, advise the jury to violate their duty, by willful disobedience to the instruction given to them by the judge of the court. A peremptory instruction leaves nothing for the jury to consider or discuss, and their office is perfunctory and formal only; that is, to sign the verdict as directed. Patterson v. Ala. F. & I. Co., 194 Ala. 278, 69 So. 952.

[10] The foregoing principles make it clear that the right to poll the jury does not exist in the case of a directed verdict, and so the authorities all hold. 38 Cyc. 1874, and cases cited in note 62. As observed by the Illinois court:

"When the court directs a verdict an issue of law is raised upon the whole case, and there is no fact for the jury to find. To poll a jury upon the rendering of such a verdict would be an idle ceremony, resulting in no possible benefit to any one. Donnohue v. I. & L. M. Ry. Co., 87 Mich. 13; Bell v. Hutchings, 86 Ga. 562." Kinser v. Calumet Fire-Clay Co., 165 Ill. 505, 46 N. E. 372.

The poll should have been denied; and, being made, its result was properly and necessarily disregarded by the court.

[11] Plaintiff had the right to amend his complaint by adding new counts while the cause was in progress, and he was properly allowed to file the additional counts to which demurrers were sustained. Code 1923, § 9513. But it was discretionary with the court whether additional evidence should be received, and the denial of that privilege to plaintiff cannot be complained of. Code 1923, § 9490.

It remains now to consider those assignments of error based upon the elimination of counts 3, 4, 5, 6, 7, 8, 10, 12, and 13.

Counts 3, 4, 5, and 8, declare upon defendant's duty to make and enforce rules restricting or regulating the speed of the ambulance when being driven on the streets of Birmingham, alleging a breach of that duty, and proximately resulting injury to plaintiff.

[12] Counts 3 and 4 are radically defective, in that they show no other relation between plaintiff and defendant, with respect to this collision and injury, than the mere fact that it occurred "while he (plaintiff) was riding in one of defendant's ambulances." So far as appears, plaintiff and the driver may have been engaged in some independent enterprise of their own, as to which defendant owed them no duty whatever.

Counts 5 and 8 by appropriate allegation avoid that deficiency, but we think they are clearly defective in their failure to allege such facts as would give rise to the duty relied upon, viz., the duty to make and enforce rules applicable to the operation and speed of the ambulance.

[13] The basis of the employer's duty to make and enforce rules for the conduct of his business has often been stated.

"Whenever the character of an employer's work is complex and dangerous, it is his duty to safeguard his employés by the adoption of approved methods and the promulgation of approved rules and regulations. But if the work is simple in character, and free from complications and complexities, the employer is under no obligation to adopt rules." 18 R. C. L. 573, § 80.

So, in Cyc. the text declares:

"Where a man is engaged in a complex and dangerous business he must adopt and promulgate such rules and regulations for the conduct of his business and the government of his servants in the discharge of their duties as will afford reasonable protection to them. But no duty to adopt rules is imposed upon the master where the business is neither complex nor extrahazardous, where the dangers incident to the work are obvious, or of common knowledge, and fully understood by the servants, or where the practice already in force renders the rule unnecessary. * * *" 26 Cyc. 1157; Labatt's Master & Servant (2d Ed.) § 1114.

In the leading case of Zebrowski v. Warner, etc., Co., 83 N. J. Law, 558, 83 A. 957, 46 L. R. A. (N. S.) 233, it was held:

"Whether a particular rule should be enacted should not be left to the jury arbitrarily to find, but there should be proof that the practice of promulgating such rules in similar manufactories under similar conditions is general. In the absence of proof that it is the general usage of other employers engaged in similar lines of business to adopt rules claimed to be necessary, and that they would be practicable and useful, a master will not be charged with negligence for failure to make them [citing Berrigan v. N. Y., etc., R. Co., 131 N. Y. 582, 30 N. E. 57]."

And the court further observed:

"It cannot be asserted that in a case like this, each jury may say what they deem to be a proper rule, and thus arbitrarily direct the conduct of each manufacturing plant under regulations not general, but special, in their application. * * * Juries may decide whether the ordinary standard has been attained, but they may not impose a standard of their own."

To the same effect are Olsen v. N. P. Lumber Co., 40 C. C. A. 427, 100 F. 384; Moore Lime Co. v. Richardson, 95 Va. 336, 28 S. E. 334, 64 Am. St. Rep. 785.

In the note in 46 L. R. A. (N. S.) 233, the editor has collected a large number of cases holding, as a matter of law, that where the work is simple in character there is no duty on the part of the master to promulgate rules for his servants.

[14] The case in hand is, we think, pre-eminently of that character. Driving a motorcar, even a heavy truck or ambulance, is a simple, ordinary, and individual act of common and daily occurrence. It is not collaborative, and in the defendant's business it had no relation to the duties or the safety of other employés—except, perhaps, as in this case, of a single assistant, who knew of the danger, if any, and who was a participant in the act. The danger, inherent in the operation, of all motorcars on city streets, was open and apparent to ordinary observation and understanding.

As to the impracticability of a rule limiting the speed of an ambulance used in emergency cases such as this, we think there can scarcely be two opinions. Speed is of the very essence of effective service. Dependent upon traffic conditions at different times and places, a high rate of speed might be entirely safe on some occasions, and human life might depend upon it—as it often does depend upon the promptest medical or surgical relief. In the very nature of the case, the act was one involving discretion on the part of the driver, and not susceptible of control by preregulation.

The conclusion cannot be avoided that these counts failed to show a condition which imposed on defendant the duty of regulation by the promulgation of a rule or rules.

Moreover, if the counts had gone to the jury, they were not sustained by the evidence necessary to support them, since it conclusively appeared that when the ambulance entered Twenty-Sixth street it was moving at a speed of only 20 or 25 miles an hour, instead of 35 to 50 miles, as alleged; and that the collision was due to an unexpected failure of the brakes to function properly.

[15] Count 6 declared upon the wanton violation of the city ordinance limiting the speed of motor vehicles on the streets. Ordinances and statutes of this sort are for the protection of the public, as often declared by this court, and their violation is not actionable in favor of employés of the offending company. B. R. L. & P. Co. v. Mosely, 164 Ala. 111, 51 So. 424; L. & N. R. R. Co. v. Holland, 164 Ala. 73, 51 So. 365, 137 Am. St. Rep. 25; South. Ry. Co. v. Cooper, 172 Ala. 505, 55 So. 211. Manifestly, also, the count is defective in not showing that defendant owed to plaintiff that duty of controlling the operation of the ambulance, since there is no allegation either of ownership or operation by defendant. The demurrer to this count was properly sustained.

[16] Count 7 is based upon the charge that Lawrence Ridout, the driver of the ambulance, was an incompetent driver, and was employed and retained in that capacity by defendant with knowledge of his incapacity, and a reckless disregard of consequences; the further charge being made that "while plaintiff was riding in one of the defendant's ambulances, and said Lawrence Ridout was driving the same, etc.," plaintiff was injured.

Although this count shows that plaintiff was an employé of defendant, it fails to show that he was engaged in any service when injured; and, so far as appears, he was a mere trespasser on the ambulance at that time. The count was subject to the demurrer.

[17] The allegation of count 10 that plaintiff "was riding in an ambulance of the defendant by and with the consent of the defendant" shows that plaintiff was a licensee merely, as to whom defendant did not owe the duty of ordinary care to avoid injuring him, but only the duty not to willfully or wantonly injure him. Lawrence v. Kaul Lumber Co., 171 Ala. 300, 301, 55 So. 111, 64 A. & E. R. R. Cas. 141. In the cases of Galloway v. Perkins, 198 Ala. 658, 73 So. 956, and McGeever v. O'Byrne, 203 Ala. 266, 82 So. 508, relied on by counsel for plaintiff, the injured parties were invitees of the defendants, and were present in the automobiles as guests—a situation quite different from that of a mere licensee, and imposing a different and higher standard of care. This count failed, therefore, to show any breach of duty, since it charged only simple negligence.

Counts 11 and 12 are employé counts, and charge that at the time of the collision plaintiff was in the ambulance in the performance of his duties as employé, and that he was under the orders and control of said Lawrence Ridout, who "negligently caused, permitted or allowed said ambulance to collide with a pole," and who was then and there acting in the line of his duties as vice president (count 11), or as assistant manager, of the defendant, having control over plaintiff in the performance of the duties of his employment (count 12). Neither of these counts shows any act of superintendence or control by Ridout over the plaintiff, and hence it does not appear that the fact and the exercise of such authority had any relation what-

ever to the collision and injury complained of.

Moreover, as we have heretofore pointed out, the undisputed evidence offered by plaintiff, including his own testimony, showed that Ridout was the driver of the ambulance, and, as a matter of law, was not exercising any duty of superintendence or control in so doing. If he drove the car in a negligent manner, he did it as a fellow servant of plaintiff, and not as a superintendent. Linderman v. Tenn., etc., Co., 177 Ala. 378, 383, 58 So. 900.

Count 13 charges that Ridout, while in the exercise of superintendence intrusted to him, negligently controlled the ambulance which was being driven by him, negligently causing it to collide with a pole, etc. For the reason just above stated, the demurrer was properly sustained, since the act of driving the ambulance was, as matter of law, the act of a fellow servant merely.

It is unnecessary to notice a ruling on the evidence assigned for error, since it is not material to the case as we view it.

Our conclusion is that the record is free from any error to reverse, and that the judgment must be affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.