BERTHA STEINDORFF v. ST. PAUL GASLIGHT COMPANY.[1]

July 1, 1904.

Nos. 13,962—(179).

**Negligence.**

It is only in exceptional cases, where the evidence is of such a conclusive character that only one reasonable inference can be drawn from it, that the question of negligence is one of law for the court.

**Contributory Negligence.**

The plaintiff's intestate was killed while working on the roof of a building by the defendant's uninsulated electric wire, which was strung along the street in close proximity to the roof, but not touching it. This action was brought to recover damages for his death. The trial court at the close of the plaintiff's case directed a verdict for the defendant. *Held*, that the questions as to the negligence of the defendant and the contributory negligence of the intestate were questions of fact, and should have been submitted to the jury.

Action in the district court for Ramsey county by plaintiff as administratrix of the estate of Albert Earnest Steindorff, deceased, to recover

1 Reported in 100 N. W. 221.

$5,000 for the death of deceased. The case was tried before Bunn, J., who directed a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*H. A. Loughran* and *John C. Mangan,* for appellant.

*How, Taylor & Mitchell,* for respondent.

START, C. J.

The plaintiff's intestate was killed on September 28, 1903, by coming in contact with the uninsulated part of one of the defendant's electric wires. This action was brought to recover damages for his death, on the ground that it was caused proximately by the negligence of the defendant in permitting its wire to become and to remain uninsulated.

When the plaintiff rested her case, the defendant's counsel moved the court to direct a verdict for the defendant on three grounds: First, that there is no evidence of any negligence on the part of defendant; second, that, assuming there is such evidence, it does not appear that such negligence was the proximate cause of the injury; third, that the deceased was guilty of negligence contributing to the injury. The trial court granted the motion on the first ground stated, and so instructed the jury. The plaintiff appealed from an order denying her motion for a new trial.

The trial court took the case from the jury, and instructed them to find a verdict for the defendant on the ground that the evidence showed that the defendant could not have reasonably anticipated that any person would come in contact with the uninsulated part of the wire; hence it was not negligent to leave it uninsulated. It was originally insulated, but the insulation corroded or wore off at a joint in the wire for a space of some four inches in length. There was evidence tending to show that this condition of the wire had existed for a sufficient length of time before the accident to charge the defendant with notice of the defect. The principal question, then, to be decided, is whether the evidence was practically conclusive that the defendant could not have reasonably anticipated that any person would come in contact with the uninsulated wire. If the evidence was not thus conclusive, the question of the defendant's negligence should have been submitted to the jury, for negligence, as a general rule, is a question of fact for the jury.

It is only in exceptional cases where the evidence is of such a con-

92 M.—32

clusive character that only one reasonable inference can be drawn from it that the question is one of law for the court. Was the inference drawn from the evidence by the learned trial judge the only one which could have been reasonably drawn therefrom? Might reasonable men fairly differ as to the conclusion to be drawn from the evidence? An answer to the questions involves a consideration of the facts which the evidence tends to establish. They are these: The plaintiff's intestate, Albert Earnest Steindorff, fifty years old, and a tinsmith for many years, was engaged with a fellow workman September 28, 1903, in retinning a box gutter on the north side of Liedertafel Hall, in the city of St. Paul. The gutter was approximately six inches wide, and four and three quarters inches in depth. The edge of the cornice was six inches from the outside edge of the gutter. One of the defendant's electric wires, one fourth of an inch in diameter, and of high voltage, was strung along the street parallel to the hall at a distance of seventeen and a quarter inches from the outside of the cornice, and twenty two and a half inches from the outside of the gutter, and twenty five inches above the cornice. The uninsulated part of the wire was at a joint therein about midway of the length of the hall. The method pursued by Steindorff and his fellow workman, Kuntze, was to shape pieces of tin, about twenty feet long and twenty eight inches wide, for the gutter, before they were brought on the roof, and then to lay the shaped pieces in the gutter, bend the edge of the sheets of tin over the outside edge of the cornice about four inches, and fasten it with nails. In driving the nails to fasten the tin, the men kneeled in the gutter, and worked toward each other; starting each from an end of the sheet of tin. Steindorff was engaged in driving nails through the tin into the edge of the cornice, and using his hammer in his right hand; and Kuntze, about ten feet away, was facing him, and also at work. Kuntze's attention was attracted by the fact that Steindorff's hammering had ceased, and, looking toward him, he saw Steindorff rising from his knees, and apparently in great distress. He ran to him, and threw his arms around him to prevent his falling off the building, thereby receiving an electric shock himself. Both men fell on the roof of the building. Steindorff was dead. He had caught the exposed joint presumably with his left hand. The joint had been in the same uninsulated and exposed condition for a long time prior to the accident, and

its dangerous condition might have been readily ascertained by the exercise of proper care.

To appreciate the dangerous proximity of this defective wire to the cornice and gutter of the hall, we must keep in mind the space the average man occupies, and the length of his arm and body. He would occupy a space of some thirteen inches in width. Working on his knees in the gutter, his hands and arms would be nearly on a level with the exposed joint of the wire, and within seventeen and a quarter inches of it when nailing the tin to the outside of the cornice—a highly dangerous place in which to work. The defendant, in the exercise of ordinary care, must have known that there was a fair probability that the gutter, cornice, and roof of the hall would have to be repaired as time went on, and that, to make the repairs, it would be necessary for workmen to go upon the gutter and cornice in close proximity to the defective wire; that is, within a little more than half of the length of a man's arm. Ought the defendant, then, to have reasonably anticipated that such workmen might come in contact with the wire? Is it practically conclusive from the evidence that the question can only be answered in the negative? We are of the opinion that this case is not one in which the evidence and the inferences to be drawn therefrom are of such a conclusive character as to the question of the defendant's alleged negligence, or the contributory negligence of plaintiff's intestate, that only one reasonable inference can be drawn from them. Much less can it be said that the only reasonable inference which can be drawn from the evidence is that the defendant was not negligent. We therefore hold that the evidence was such that the cause should have been submitted to the jury. As there is to be a new trial, we announce this conclusion without any detailed discussion of the facts or the evidence; deeming this to be the fair and wise course in cases where there must be a new trial.

Order reversed and a new trial granted.