# Birmingham Railway, Light & Power Company *v.* Canfield.

## *Injury to Servant.*

(Decided May 30, 1912. 59 South. 217.)

1. *Electricity; Defective Appliances; Jury Question.*—Under the evidence in this case it was a question for the jury whether the Electric Company, having high and low voltage wires on the same poles, maintained the wires in a defective condition so that the high voltage wires coming in contact with the low voltage wires caused injury to an employee working on the low voltage wire.

2. *Same; Care Required.*—The diligence required of one producing an agency as obscure, uncontrollable and dangerous as electricity is commensurate with the danger its employment necessarily creates.

3. *Master and Servant; Injury to Servant; Negligence.*—Where an electric company maintains low and high voltage wires on the

same poles, and a wire carrying high voltage came in contact with a low voltage wire, and an employee working on the low voltage wire was injured by an electric shock, the negligence in permitting the wires to come in contact was the proximate cause of the injury.

4. *Same; Assumption of Risk.*—In the absence of knowledge to the contrary, an employee may assume that the employer has not been negligent so as to enhance his danger over that ordinarily incident to the service.

5. *Same.*—The evidence examined and held to justify a finding that the low voltage wire on which the employee was working was heavily charged with contact by a high voltage wire.

6. *Same; Instructions.*—A charge asserting that the fact that the employee was injured on the occasion of the accident, no matter how seriously, did not entitle him to a verdict, was misleading and properly refused.

7. *Same.*—Where the record on appeal did not contain all the evidence and did not include the photograph of the place of injury admitted in evidence, the appellate court is not in position to review the refusal of instructions based on the evidence.

8. *Same; Evidence.*—Where the evidence showed that the low voltage wire could not have caused the injury, the evidence of a witness that at the point of contact between the wires there was burning, was admissible to show the condition of contact of the wires as showing the source of the high current causing the injury; the action being by an employee for injuries received from an electric shock while working on the low voltage wires maintained on a pole, also carrying wires of high voltage.

APPEAL from Birmingham City Court.

Heard before Hon. C. C. NESMITH.

Action by Lloyd H. Canfield against the Birmingham Railway, Light & Power Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The facts appear from the opinion of the court. The following charges were refused to the defendant: (3) "If you believe from the evidence that at and prior to the time of the accident there was no trouble with the lights supplied with electric current from the Edison wire at Twenty-Third street, which it is alleged was in contact with the arc circuit, then you must find for defendant." (5) "If you believe from the evidence that the Edison wires were properly grounded, and that the said wires were in contact with the arc circuit at Twenty-Third street, and if you further believe from the evi-

dence that the said Edison wires could not have injured plaintiff, had he come in contact with them, then you must find for defendant." (6) "If you believe from the evidence that, had the Edison wire been in contact with the arc circuit wire at Twenty-Third street, the electric light slide, with current by said Edison wire, would have been affected and caused to flicker, and if you further believe from the evidence that at and prior to the time of the acicdent the said lights were not affected, and were not flickering, then your verdict should be for the defendant."

TILLMAN, BRADLEY & MORROW, and CHARLES E. RICE, for appellant. The defendant was entitled to the affirmative charge as to the 3rd count under the evidence. Counsel discuss other charges refused and insist that their refusal was error, but cites no authority in support thereof. The court erred in admitting evidence that the wires were burning at the point of contact.— *Sloss-S. S. & I. Co. v. Mitchell,* 49 South. 852.

HARSH, BEDDOW & FITTS, for appellee. We respectfully ask the privilege of calling the court's attention at the outset to the case of *Harrison v. K. C. El. Co.,* 7 L. R. A. (N. S.) 294. Under the evidence it was a question for the jury as to what caused the accident, and the court could not give the affirmative charge.—*Chambliss v. Mary L. C. & R. Co.,* 104 Ala. 656. The court did not err in refusing the 2nd charge requested.—*W. U. T. Co. v. Northcutt,* 158 Ala. 540; *Herndon v. State,* 56 South. 88. The 3rd charge was properly refused.—155 Mass. 584; 99 N. Y. 158; 50 Am. Rep. 352. Charge 4 was properly refused.—*Sims v. State,* 146 Ala. 109; *Morris v. State,* 146 Ala. 66; *Conrad v. Gray,* 109 Ala. 131. The 5th charge was properly refused.—*B. R., L. & P. Co. v.*

*Lee,* 153 Ala. 386; *Tutwiler C. C. & I. Co. v. Nichols,* 146 Ala. 364. The 6th charge was properly refused.—*Wes. U. v. Northcutt, supra.* There was no error in the admission of evidence.—133 N. Y. 114; 53 N. W. 538; 59 N. W. 593; 54 Pac. 759.

McCLELLAN, J.—Action for personal injuries, by a servant (appellee) against the master. Of the nine counts of the complaint filed, one only—the third—was not affirmatively charged out by the court. That, with a general traverse and special pleas of assumption of risk and contributory negligence, of the sufficiency of which special pleas no question appears to have been made, constituted the issues submitted to the jury. The plaintiff was a lineman in the employ of the defendant, and was, when injured, engaged in that service. The point of contention between the litigants really arises in respect of the particular, immediate physical means of his injury. The plaintiff's theory—and this was accepted by the jury—was that a deadly, high voltage was communicated to his body through the imparting, by contact, of that dangerous current, to a wire or wires of low voltage with which, in the performance of his duty, plaintiff's person came in contact, either directly or through a broken telephone wire he was directed to remove from in or about a transformer. On the other hand, the theory of the defendant was that his injury resulted from his bringing his person in contact with the high-voltage wires of its plant. The third count was drawn under the first subdivision of the Employer's Liability Statute (Code, § 3910).

The description of the defect in the ways, works, etc., is as follows: "The apparatus for attaching said wires to one of said poles, to wit, a pole at or near Twenty-Third street and First alley in said city, to wit, a cross-

arm and pin therein, was defective, and as a proximate consequence of said defect, said wire came near to said pole upon which plaintiff was, and being heavily charged with electricity, caused plaintiff to be burned and shocked by electricity on the occasion aforesaid, and to suffer said injuries and damage."

The plaintiff was injured at a place approximately two blocks from the place whereat the alleged *defect* existed. Strung on poles and cross-arms between the two places and beyond them on the line was a wire which carried a highly dangerous current of 3,000 to 4,000 volts, and also a wire or wires carrying a voltage of 110—a voltage not reguarded as highly dangerous. The high-voltage wire was strung above that of lower voltage. These wires were attached to glass insulators, which, in turn, were attached, screwed, to wooden pins; and these pins were inserted in holes in cross beams or arms which were fastened to the pole.

It was the plaintiff's contention that the place where the cross-arm was attached to the pole, at Twenty-Third street and First alley, was lower than that of the wire attachment on the poles on both sides thereof, which condition would permit the drawing of the pin, supporting and screwed to the glass insulator, out of the hole in the cross-arm, by the natural tension of the low-voltage wire as attached, on both sides at greater elevations, to the neighboring poles, *unless the pin* was so secured to the cross-arm as to overcome this tension; and that on this occasion the *pin* was drawn out by the tension of the low-voltage wire, and, rising to approach the level of the attachment of that wire to the neighboring poles, came in contact with the high-voltage wire at that point, received into it a higher and very dangerous current, which was transmitted to the place whereat plaintiff was at work, injuring him when his person

came in contact with a wire that would otherwise have been safe, namely, a wire, which, if unconnected with one carrying high voltage, would not, could not, have inflicted the injury suffered by plaintiff.

There was evidence tending to show that a properly constructed or maintained system of this kind, with cross-arms resting at different elevations, should have the pins, in the lower cross-arms, nailed or pinioned thereto. There was evidence to the contrary.

What due prudence, foresight, and diligence would have required, or did require, under such circumstances, was a jury question on the whole evidence; and, if the view of the plaintiff prevailed with the jury, then there was a *defect* in the condition of the plant within the charge laid in the *third* count.

Electricity is an illusive, in a degree uncontrollable, and a dangerous, element. The character and nature of the hazard to which, if unguarded, it subjects persons and property, suggests a measure of caution and diligence commensurate with the danger its employment necessarily calls into existence.

The defendant was not entitled to the affirmative charge, on the evidence before us, on the theory that the defect alleged in the third count was not shown, or that its presence was not the result of negligence of the defendant or of some one for whose neglect the defendant was responsible. If there was a defective condition in the particular indicated, and in consequence of it low-voltage wires were charged with, and transmitted, the highly dangerous current to the place at which plaintiff's service required him to be, and he was, as appears without dispute, ignorant of the conditions made by the contact of the high with the low voltage wires, and was injured by the contact of his person with the wire thus charged with the high and dangerous current, it is too

evident for doubt that the order of negligent causation and its damnifying effect were so connected, so related, as to admit of the ascription of the injury to the negligent cause, viz., the defect set forth in the third count; for the employee may assume, in the absence of knowledge to the contrary, that the master has been guilty of no negligence which would enhance his danger over that ordinarily incident to his service or that would create a hazard not existent without neglect on the part of the master.

It is contended, however, for the appellant, that there was no evidence that the low-voltage wire was detached from the cross-arm at Twenty-Third street and First alley before or at the time of plaintiff's injury, so as to impart the highest voltage to the low-voltage wire. It was shown for the defendant that by the use of the testing apparatus, contrived for the purpose, it was found at 7, 12 and 3 o'clock, during the day and before the injury which occurred about 7 in the evening, that the high-voltage wire in question was in proper order—was not in contact with any other wire in that section of the city.

There was evidence to the effect that on the morning next succeeding the plaintiff's injury the low-voltage wire was detached from the cross-arm, at the place indicated, and was in contact with a high-voltage wire running to the scene of plaintiff's injury. This evidence, in connection with other phases of the testimony descriptive of the event and of the surrounding circumstances attending it, afforded, if credited, at least a degree of proof that the contact of the wires, as indicated, existed when plaintiff was injured.—*Jackson Lumber Co. v. Cunningham,* 141 Ala. 206, 37 South. 445; *L. & N. R. R. Co. v. Fitzgerald,* 161 Ala. 397, 414, 49 South. 860; *Lewy Art Co. v. Agricola,* 169 Ala. 60, 70, 53 South.

145. See, also, *Chamberlain v. Southern Railway Co.,* 159 Ala. 171, 48 South. 703; *Western S. C. & F. Co. v. Cunningham,* 158. Ala. 369, 376, 377, 47 South. 109. Accordingly, charge 4, requested by defendant, was well refused.

It is earnestly insisted for appellant that scientific principles, and scientifically accepted effects and results following therefrom, refute, absolutely, the idea that plaintiff could have been injured *as defendant understands* he describes and ascribed his injury. The bases for this insistence cannot be satisfactorily ascertained on the record before us. In the first place, a photograph of the place of the injury was admitted in evidence, but it is omitted from the bill of exceptions. It was taken after the event. The plaintiff testified that the photograph represented "the condition at the time of the accident, with the exception that it does not show a number of telephone wires that have been taken down since the accident. A good many of the electric service wires have been removed since that night." In his testimony, at several places, he referred to the photograph, the bill reciting that he indicated the location, etc., of wires by reference to the photograph. The bill recites that it contains "all the evidence in the case." This recital is refuted by the omission of the mentioned photograph. If the picture was before this court, as it was before the trial court below, doubtless a better idea could be had of the situation.

In the second place, we are not able to get a satisfactory definite idea of what particular (ordinarily) low-voltage wire of the defendant was in contact with the broken telephone wire, or at what particular place plaintiff was, on or about the telephone pole on which he was engaged, when injured, removing from contact

with the defendant's wire or wires the broken telephone wire. In short, the narrative of the immediate situation and condition attending the injury is far from clear.

In this state of the evidence before us, which, with *other* evidence not made available to us, was before the trial court, we cannot review the action of the trial court in refusing, at the request of the defendant, charges numbered 3, 5, and 6, which the reporter will set out.

Charge 2 was well refused. It reads: "The fact that plaintiff was injured on the occasion of the accident, no matter how seriously, does not entitle plaintiff to recover a verdict in this case."

If the purpose of the charge was to advise the jury that averred negligence shown, and not the mere fact of injury, however serious, was essential to entitle plaintiff to recover, it was not so drawn as to particularly and only assert that sound idea. The fact of injury, if coupled with negligent conduct or omission proximately causing the injury, is, obviously, an element of the right to recover therefor. The charge was calculated to mislead. It was well refused.

The plaintiff's witness Thornbury was asked this question, to which defendant's objection was overruled: "At the point of contact between this secondary wire and the arc circuit was there any burning into the wires?" This inquiry had reference to the condition of contact at Twenty-Third street the morning after the injury. It sought the eliciting of a circumstance tending, if credited, to prove the source and occasion of the high current to which the testimony for plaintiff ascribed his injury. There was testimony to the effect that the voltage (110) usually carried by the secondary wires could not have injured him as he was injured.

This disposes of all of the errors assigned and urged here.  They are not sustained.  The judgment is hence affirmed.

Affirmed.  All the Justices concur.