(76 South. 963)
DOROUGH v. ALABAMA POWER CO.
(6 Div. 437.)
(Supreme Court of Alabama. Nov. 15, 1917.)

1. ELECTRICITY 18(3)—INJURIES—CONTRIBUTORY NEGLIGENCE.

Where a servant of a cement company, while putting up steel handrails, having been warned by the chief electrician of the cement company that if he touched certain power wires with the steel pieces it would kill him, as there were 22,000 volts on the line, in reversing a section of the handrail that it might be properly put in place, touched the power line, and was killed, he was guilty of contributory negligence, relieving the power company from liability for his death.

2. APPEAL AND ERROR 1060(1)—HARMLESS ERROR — REFUSAL TO PERMIT ARGUMENT — CREDIBILITY OF WITNESSES.

In an action for death by electric shock, there being no material conflict in the testimony, all of which came from plaintiff's own witnesses, for whose credibility he vouched, there was no prejudicial error in the refusal of the trial judge to allow plaintiff's counsel to argue to the jury that they could not or ought not to believe the testimony of a witness with respect to warning of danger given deceased, though where a party is not bound by his own witnesses, and the issue of the credibility of the evidence is submitted to the jury, doubtless counsel would be entitled to argue the issue.

3. TRIAL 140(1) — ESTABLISHMENT OF ADVERSARY'S DEFENSE — AFFIRMATIVE CHARGE.

Where a party's own witnesses establish his adversary's case or defense without material conflict or dispute, there is no issue on the credibility of the evidence, and the affirmative charge for the adversary may properly be given without such hypothesis.

4. APPEAL AND ERROR 1064(2)—HARMLESS ERROR—INSTRUCTION.

In an action for death by electric shock, where plaintiff's own witnesses, defendant introducing no testimony, established the defense of contributory negligence, the statement of the trial judge, in instructing the jury to find for defendant, that he did not think plaintiff was entitled to recover, though technically erroneous, was harmless to plaintiff.

Appeal from City Court of Birmingham; John H. Miller, Judge.

Action by William F. Dorough, as administrator, against the Alabama Power Company, for damages for death of his intestate. From a judgment for defendant, plaintiff appeals. Affirmed.

Plaintiff sues to recover for the death of his intestate who was killed as the result of contact with defendant's high power wire, while he was in the service of the Standard Portland Cement Company, at a place where his work required him to be. The complaint charges that defendant's power wire ran over or near the place where intestate was working, and that an instrument or article in his hand came in contact with a heavily charged

wire, and that intestate's injury in this way was due to the negligence of defendant "in or about the maintenance, care, or control of said wire." The evidence showed that intestate was working in an inclined trestle, covered with a sheet iron roof under which ran a conveyor's belt, and on either side of which was a plank walkway for employés. The eaves of the roof were about eight feet above the floor, and projected about a foot beyond the walkways. Intestate and assistants were engaged in putting up steel handrails along the outer side of the walk, as a protection to employés using them, and were working at a point about 40 feet above the ground, and about the point where defendant's tower wire passed over the trestle about 12 or 24 inches above the comb of its roof. Intestate was handling a railing about 13 feet long, and its proper adjustment required that its ends be reversed, and this was done by standing at the outer side of the walkway and turning the piece over clear of the eaves with the result that the upper end struck the power wire, which was not insulated, and conducted the current into intestate's body. The evidence showed without dispute also that though intestate had worked at his job only a few days at most, yet he knew of the presence of the power wires at that point; that he had been warned by the chief electrician of the cement company the day before his injury that if he touched the wires with those steel pieces it would kill him, as there was 22,000 volts on the line, and that intestate himself told his new assistants in the forenoon of the day of his injury that if they got mixed up with those things—the wires—they would get a heavy voltage, about 22,000 volts. With respect to the handling of those steel pieces, the assistant to intestate who was working with him at the time says:

"We would go down and pick one up and walk up the conveyor, handling one at a time, each one of us. We would not turn them down there, we would just pick them up as we found them. We could have turned them all there if we had wanted to. Sometimes we had turned them after we got them up there, upon the inside, in and out between the upright pieces. We could turn them that way. * * * He could have turned them by getting down on the conveyor, either to the right or left of where he did turn them, without any trouble."

As to the particular piece, this witness says:

"It was brought up the wrong way, and had to be turned, reverse ends with it. We could not turn it inside under the roof without taking it in and out of the open work, open spaces of the trestle work. It could not turn over, directly over. It would have to go in and out of these open places. We figured it the most convenient way to turn it was to stick it outside. * * * We had not been doing it that way altogether. We had turned others in and out of these places."

All the witnesses were introduced by plaintiff, defendant resting his case on the testimony offered by plaintiff. The general issue was pleaded, with special defenses, in short, by consent.

At defendant's request the trial court instructed the jury to find for defendant, if they believed the evidence, and thereupon remarked orally to the jury:

"The law makes it my duty if I think a case has not been made out sufficiently to submit to you, to instruct you as to the verdict. I don't think plaintiff is entitled to recover."

An exception was reserved by plaintiff to this statement of the court.

Harsh, Harsh & Harsh, of Birmingham, for appellant. Percy, Benners & Burr, of Birmingham, for appellee.

SOMERVILLE, J. [1] On the undisputed evidence in this case—all of it coming from the mouths of witnesses introduced by the plaintiff—we think it must be concluded as a matter of law that the intestate was guilty of such contributory negligence in the proximate causation of his injury as to prevent any recovery for the alleged negligence of the defendant company; conceding, without deciding, that defendant was guilty of negligence in maintaining its high power wires in such proximity to the inclined trestle on which intestate was working.

The facts present every element necessary to the legal conclusion stated, and do not permit of any rational inference to the contrary. L. & N. R. R. Co. v. Hall, 87 Ala. 708, 6 South. 277, 4 L. R. A. 710, 13 Am. St. Rep. 84; Wood v. R. & D. R. R. Co., 100 Ala. 660, 13 South. 552; Sloss I. & S. Co. v. Knowles, 129 Ala. 410, 30 South. 584; Alteriac v. West Pratt Coal Co., 161 Ala. 435, 49 South. 867; Kilby Co. v. Jackson, 175 Ala. 125, 57 South. 691.

Plaintiff relies strongly on the case of Card v. Wenatchee, etc., Co., 77 Wash. 564, 137 Pac. 1048. There a farmer handling a metal pipe accidentally brought it in contact with a power wire running 17 feet above the highway near his land. On the question of contributory negligence the court said:

"It is finally argued that the deceased was negligent in allowing the pipe in his hands to come in contact with the wire. This, we think, was also a question for the jury, and could not be determined as a matter of law, in view of the facts we have noticed; especially in view of the fact that deceased was where he had a right to be, engaged in his usual avocation; that appellant's wire was suspended over his land without right, and it not being shown that deceased *had knowledge of the extremely dangerous character* of the current carried on the wire. (Italics supplied.)"

Had the deceased been fully apprised of the danger in touching the wire, no doubt the court would have reached a different conclusion.

In Steindorff v. St. Paul, etc., Co., 92 Minn. 496, 100 N. W. 221, plaintiff's intestate was killed while laying tin guttering on a roof, by touching a power wire running 22 inches from the outer edge of the gutter, at a joint where the insulation was worn off. It was there held on the facts that the question of contributory negligence was for the jury, but

it does not appear that the intestate knew of the uninsulated condition of the joint, nor even that it was a wire carrying a dangerous current.

The trial judge did not err in giving for defendant the general affirmative charge with hypothesis.

We do not overlook the contention of appellant's counsel that there was a conflict in the evidence, viz. that Lewis, the chief electrician, stated that he gave the warning to intestate, while he was at work on this job, the day before the accident, and that Pitchford, intestate's superior, stated that Dorough had not worked before on that job. But the record shows that Pitchford stated a little later that this was not the first day that intestate worked on it. We do not think there is any such conflict in the testimony quoted as to support the inference that Lewis' testimony that he warned intestate was either untruthful or erroneous.

[2] There being no material conflict in the testimony, all of which came from plaintiff's own witnesses, for whose credibility he vouched, we cannot hold that there was prejudicial error in the refusal of the trial judge to allow plaintiff's counsel to argue to the jury that they could not or ought not to believe the testimony of Lewis with respect to the warning given to intestate. Where a party is not thus bound, and the issue of the credibility of the evidence is submitted to the jury, no doubt counsel would be entitled to argue that issue to the jury. See Shipp v. Shelton, 193 Ala. 658, 69 South. 102.

[3] But where a party's own witnesses established his adversary's case or defense, without material conflict or dispute, there can be no issue upon the credibility of the evidence, and hence the affirmative charge might properly be given without such hypothesis.

[4] In this aspect of the case, while the statement of the trial judge that he did not think the plaintiff was entitled to recover was technically erroneous, it could not have been prejudicial to plaintiff, and we do not think the judgment ought to be reversed therefor.

Let the judgment be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.