(128 So. 211)
### BIRMINGHAM AMUSEMENTS, Inc., v. TURNER.
### 6 Div. 522.

Supreme Court of Alabama.
March 27, 1930.

Rehearing Denied May 22, 1930.

B. F. Smith and Coleman, Coleman, Spain & Stewart, all of Birmingham, for appellant.

Fort, Beddow & Ray and G. Ernest Jones, all of Birmingham, for appellee.

GARDNER, J.

The suit is under the homicide statute to recover damages for the death of Earle E. Turner, Jr., a boy under eight years of age, who was killed in East Lake Park, Birmingham, Ala., on May 10, 1928, by contact with an electric current in the "third rail" of a miniature railroad operated by defendant amusement company. There was judgment for the plaintiff, from which defendant appeals.

█ The first question presented relates to the action of the court in overruling the demurrer to the complaint, count A. We find no error in this ruling. "Electricity is an illusive, in a degree uncontrollable, and a dangerous element. The character and nature of the hazard to which, if unguarded, it subjects persons and property, suggest a measure of caution and diligence commensurate with the danger its employment necessarily calls into existence." Birmingham Rwy. Lt. & P. Co. v. Canfield, 177 Ala. 422, 59 So. 217. See, also, Dwight Mfg. Co. v. Word, 200 Ala. 221, 75 So. 979. "The fact that an inherently dangerous agency or instrumentality is installed on a proprietor's private premises by an independent contractor does not absolve the proprietor from the duty to exercise reasonable care and diligence to conserve the safety of third persons, especially children, who go upon the premises, thus made perilous * * *. An element of this duty is the exaction that a proprietor shall exercise reasonable care and diligence to inspect his premises, with a view to becoming sufficiently advised to meet this duty's demand toward those who it is reasonable to expect will enter the premises." Golson v. W. F. Covington Mfg. Co., 205 Ala. 226, 87 So. 439, 441.

Count A is not rested upon the doctrine of the "attractive nuisance" cases, but upon the general rule of liability as found quoted in Thompson v. Alexander City Cotton Mills Co., 190 Ala. 184, 67 So. 407, 410, Ann. Cas. 1917A, 721, as follows:

"That, although the dangerous thing may not be what is termed an "attractive nuisance' (that is to say, may not have especial attraction for children by reason of their childish instincts), yet where it is so left exposed that they are likely to come in contract with it, and where their coming in contact with it is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them, from its being so exposed, and is bound to take reasonable pains to guard it, so as to prevent injury to them."

█ The averments of the complaint sufficiently disclose the duty owed to plaintiff's intestate, an invitee upon the premises, and a negligent breach thereof by his exposure to an uninsulated wire or metallic conductor of electricity, dangerous to human life. The general principles of law above noted should suffice to show the sufficiency of the complaint as stating a good cause of action. Alabama By-Products Corporation v. Cosby, 217 Ala. 144, 115 So. 31; Birmingham Elec. Co. v. Kirkland, 218 Ala. 429, 118 So. 640; Sheffield Co. v. Morton, 161 Ala. 153, 49 So. 772; Ala. City, G. & A. Rwy. Co. v. Appleton, 171 Ala. 324, 54 So. 638, Ann. Cas. 1913A, 1181.

The authorities cited by counsel for appellant (among them, Hardy v. Missouri Pac. R. Co. (C. C. A.) 266 F. 860, 36 A. L. R. 1; Roche v. New York Edison Co., 84 Misc. Rep. 427, 146 N. Y. S. 294; Read v. City & Sub. Rwy. Co., 115 Ga. 366, 41 S. E. 629) have been duly considered, but are readily distinguishable from the case here stated, and do not militate against the conclusion reached as to the sufficiency of the complaint.

Nor was there error in refusal of the affirmative charge requested by defendant. East Lake Park was a public resort and unenclosed. At the time of the accident, and for a period of three years prior thereto, defendant had possession of this park under a lease, and operated various amusement devices inviting the patronage of the public, among them a miniature railroad train. The track for this train consisted of two steel rails fifteen inches apart and a rail in the center known as the third rail. It was this third rail which was.

charged with electricity. It had guard rails which originally were of steel and five-eighths of an inch apart. The depth of the third rail below the surface was originally two and a half inches. In the course of time wooden guard rails supplanted the steel. The width between the guard rails became greater and the third rail nearer to the surface, to which the attention of one Ryall, manager in charge for defendant, was directed, according to plaintiff's proof. A short time before the accident this track was repaired under Ryall's direction and superintendence. The work was not done by carpenters or mechanics or skilled labor of any character, but by the employees who did odd jobs of various character. As thus repaired, plaintiff's evidence tends to show the width between the guard rails varied from three-fourths of an inch to three inches, one witness stating that "the wide places were all over the track," and the depth of the third rail varied from one-half inch to three inches, with witness Coley saying that "in other places it was level with the ties." Manager Ryall saw the completed work and the condition of the track.

On the day of the accident plaintiff's intestate, with other children, was coming from school, entering East Lake Park at Eighty-Fourth street. He was walking through the park in a well-defined path leading to a bridge over a small stream. Over this bridge the miniature train also ran, but there were planks on each side that pedestrians could use. Many people from time to time used the bridge, including children going to and from school. The park season had opened, and there is evidence that as many as half million children visited that park during a season. Many children were seen about the bridge and wading in the branch there. Children were all over the park during the time the attractions were on, and no part was fenced and no signs giving warning of any danger were placed at the track, and no banisters to the bridge. Upon reaching this bridge, some one of the children dropped a pencil, which fell where was located the third rail, and plaintiff's intestate stooped down to get it. He was barefooted, and the evidence tends to show one foot on or across one of the rails of the track. It was when he reached for the pencil he received the deadly current. The evidence further tends to show that at the time the voltage was 220, which is dangerous, and that a voltage of 110 is dangerous under certain conditions and contacts, especially to a child, who has less resistance to an electric shock than an adult. The expert testifying upon this question stated there "had been a number of children electrocuted from 110 volts." Iron is a good conductor of electricity, and standing on wet ground also furnishes good contact and renders shock more dangerous. The ground nearby was damp, and some of the children had been wading in the water, but no evidence this boy had done so.

■ In brief, plaintiff's case is that, while originally the guard rails were steel, and as close as five-eighths of an inch apart, and the third rail a depth of two and a half inches, yet defendant had permitted this condition to be so changed by inexpect workmen as to leave this third rail much more exposed and likely to be touched by some one, especially children. The varying width between these guard rails and depth of the third rail is shown, including the location of the accident at the bridge. The evidence offered tended to establish this theory, and we think a jury question was presented as to whether or not defendant was negligent in this respect. The defendant's duty to exercise reasonable care and diligence to conserve the safety of those at the park was emphasized by the knowledge of the customary presence of children in great numbers. Golson v. W. F. Covington Mfg. Co., supra; Ala. By-Products Corp. v. Cosby, supra. The affirmative charge was properly refused.

■ Coming to a brief consideration of other questions presented, we are of the opinion no error was committed in permitting the witness Melton to testify that he had called Ryall's attention to the condition of this track as above outlined before the day of the accident, although this may have been also before the repair of the track in the April preceding. This was but a circumstance tending to show knowledge on the part of the defendant's manager of the dangerous condition of the track and a failure on his part to see that this condition was materially improved after the repair by the nonexpert workmen. Assignments of error 5 and 6 are without merit.

■ Defendant offered evidence tending to show that others had come in contact with this third rail without damage, and that in fact the voltage thereof was not dangerous. Ryall, the manager, admitted he did not know what voltage it contained, and that at one test it was 220, which, as we understand the record, was after the accident. There was no error, therefore, in permitting plaintiff on cross-examination of the witness to elicit the fact that he had never requested any test made as to the voltage, as having some bearing on the question of negligence.

■ The evidence of Earle Turner, Sr., tended to show the track remained for some few days after the accident without any change in its condition, and that it was in that same condition when he made the examination and measurements to which he testified, and involved in assignments of error 16 to 33. Under these circumstances the evidence was admissible, and no error here appears.

Assignments of error 34 and 35 have reference to testimony of Earle Turner, Sr., as to the use of the path, and no relation to the condition of the track, as counsel in brief appear to argue in connection with assignments 36 and 37. The admissibility of testimony as to the frequent use of this path is not questioned, and assignments 36 and 37 appear to relate to evidence as to the condition of the track at the place of the accident from observation made on that day by witness McCluskey.

The substance of the oral charge to which exception was reserved was but a statement of the rule that electricity is a dangerous element, and that due care concerning its use suggests a measure of caution commensurate with this danger. Birmingham Rwy. Lt. & P. Co. v. Canfield, supra. No error here appears.

Whatever may be said as to the propriety of the argument of counsel objected to, it is very clear that reversible error could not be rested upon the ruling of the court thereto. No analogy is to be found in the cases of Alabama Fuel & Iron Co. v. Andrews, 212 Ala. 336, 102 So. 801, and Birmingham Rwy., Light & P. Co. v. Drennen, 175 Ala. 353, 57 So. 876, Ann. Cas. 1914C, 1037, cited by counsel.

As to refused charges made the basis of assignments 48–51, the evidence tended to show that under certain conditions, and especially to children of tender age, an electric current of 110 voltage is dangerous, and these charges would exempt defendant from liability for ignorance thereof, when its duty concerning the use of so dangerous an agency required a measure of care commensurate with such danger. These charges were properly refused.

Refused charge, the basis of assignment 45, would acquit defendant of all negligence for not knowing in advance that some child would do just as did plaintiff's intestate. The rule of due care, under the circumstances, is not so restricted.

The substance of the refused charge made the basis of assignment 47 was embraced in the oral charge of the court, and consideration as to its correctness from a technical standpoint is not necessary.

Refused charge V was erroneous, as under the undisputed proof plaintiff's intestate was an invitee rightfully upon the premises, and in no sense a trespasser.

Upon motion for new trial, the trial court reduced the amount of the verdict one-half, to which plaintiff acceded, and thereupon denied the motion. We find nothing in this action of the trial court of which defendant can complain.

There is no reversible error in the record. Let the judgment be affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.