172 So. 621

**BYARS et al. v. ALABAMA POWER CO.**

**6 Div. 975.**

Supreme Court of Alabama.

Jan. 7, 1937.

Rehearing Denied March 4, 1937.

534

V. W. Elmore, of Gordo, and Jones & Dominick and A. Bruce McEachin, all of Tuscaloosa, for appellants.

McQueen, McQueen & McQueen, of Tuscaloosa, D. D. Patton, of Carrollton, and Martin, Turner & McWhorter and J. C. Blakey, all of Birmingham, for appellee.

KNIGHT, Justice.

This cause is here by appeal, and on petition of appellants for certiorari to the circuit court of Pickens county.

The plaintiffs, the widow and dependent minor children of James A. Byars, deceased, suing for the use and benefit of the New Amsterdam Casualty Company, filed this suit in the circuit court of Pickens county to recover of the defendant, the Alabama Power Company, a certain sum of money (together with attorneys' fees) as damages for the wrongful death of the said James A. Byars.

It is averred in the several counts of the complaint that the said James A. Byars, deceased, was an employee of the Tuscaloosa Cotton Seed Oil Company at the time of his injury and death, and that his injury and death were occasioned by an accident which arose out of and in the course of his employment; that the said Byars and the said Tuscaloosa Cotton Seed Oil Company, and the defendant were subject to the provisions of article 2 of the Workmen's Compensation Law of Alabama (Code 1923, § 7543 et seq.) ; that the said Mamie Byars and the two named children of the deceased employee elected

to receive and are entitled to receive, and are receiving from the New Amsterdam Casualty Company, who was the insurance carrier of the Tuscaloosa Cotton Seed Oil Company, the sum of $7.20 per week for 300 weeks, amounting to $2,160; that said insurance company is subrogated to the right of said widow and dependent children to recover of this defendant said compensation, and an attorney's fee, and plaintiffs file this suit for the benefit of the New Amsterdam Casualty Company, as such insurance carrier.

This suit is evidently brought under the provisions of section 7586 of the Code. No question arises on the pleadings.

Defendant pleaded general issue and contributory negligence.

At the conclusion of the evidence, the court gave at the written request of the defendant a charge in the following words: "If you believe the evidence in this case, you cannot return a verdict for the plaintiff."

And the court thereupon said to the jury: "And I have written the verdict for you."

Continuing, the court said: "I give you this charge because under the evidence in this case, which was uncontradicted and undisputed, the court is of the opinion that Mr. Byars was guilty of contributory negligence, which brought about and caused his death; and believing that way, that that is the law and the evidence, it is my duty to so instruct you; and I give you this charge: 'I charge you, gentlemen of the jury, that if you believe the evidence in this case, you cannot find a verdict for the plaintiff. I will ask one of you gentlemen to sign this verdict: "We, the jury, find the issues in favor of the defendant, Alabama Power Company." One of your number just sign the verdict: you need not leave the box.'"

The plaintiff duly reserved an exception to this action of the court in giving said charge to the jury.

The bill of exceptions further recites: "And in open court, and in the presence of the jury, and before the jury retired, the plaintiff excepted to each portion of either the oral charge or remarks of the court, whichever was the proper designation for the statement or statements by the court to the jury, and the court then stated as follows:

"'Well, then I will withdraw the remarks made by the court. Gentlemen, don't pay any attention to the remarks made by the court. Just sign the verdict.'"

Thereupon, counsel for plaintiff then stated: "I am afraid that might not cure it, Judge, so we still reserve an exception."

Whereupon the court said, "All right." And thereupon, one of the jurors, without the jury having retired, signed the following verdict: "We, the jury, find the issues in favor of the defendant, Alabama Power Company."

It also appears from the bill of exceptions that after the court announced that he would give the general charge for the defendant, counsel for plaintiffs then stated as follows: "Will your honor allow me to argue to the jury the truth of the evidence?"

Whereupon the court said: "No, sir, I will not let you argue to the jury at all."

To this action and ruling of the court the plaintiffs duly reserved an exception.

█ Under the circumstances outlined above, the action of the court amounted to a directed verdict for defendant, and it could only be justified upon the theory that the plaintiffs, upon whom rested the burden of proof to establish their right to recover, had wholly failed to adduce evidence to support their cause of action, or that the testimony of the plaintiffs' own witnesses, without conflict, made out the defense of the opposing party. Harris v. State ex rel. Wilson, Solicitor, 215 Ala. 56, 109 So. 291; O'Bar v. Southern Life & Health Ins. Co., 232 Ala. 459, 168 So. 580; Christian v. Stith Coal Co., 189 Ala. 500, 66 So. 641; Bedsole v. Davis, 189 Ala. 325, 66 So. 491; Tobler v. Pioneer M. & M. Co., 166 Ala. 482, 52 So. 86; Sims v. Sims, 2 Ala. 117; Jarrell v. Birmingham Water Works Co., 179 Ala. 503, 60 So. 835; Dorough v. Alabama Great Southern R. Co., 221 Ala. 305, 128 So. 602.

█ If, however, the plaintiff made out a prima facie case, and the defense of contributory negligence was dependent upon oral testimony, the credibility of the evidence must be referred to the jury, and the court could not direct a verdict for the defendant, thus assuming the credibility of the exculpatory evidence, though such evidence was clear and without dispute. Shipp et al. v. Shelton, 193 Ala. 658, 69 So. 102; Sherrill v. Merchants' & Mechan-

536

ics' T. & S. Bank, 195 Ala. 175, 70 So. 723; Scott v. State, 110 Ala. 48, 20 So. 468; Lawson v. Mobile Electric Co., 204 Ala. 318, 85 So. 257; Dorough v. Alabama Power Co., 200 Ala. 605, 76 So. 963.

And in such circumstances counsel have the right to argue to the jury the issue of the credibility of the witnesses. Dorough v. Alabama Power Co., supra; Lawson v. Mobile Electric Co., supra; Harris v. State ex rel. Wilson, supra.

Quite a difference is to be noted between the legal effect of a directed verdict, and a charge to find for one or the other litigant, with hypothesis.

Was the court, under the evidence, justified in directing a verdict for defendant?

The evidence, without conflict, showed that James A. Byars, deceased, at the time of his death, was an employee of the Tuscaloosa Cotton Seed Oil Company, and the evidence further tended to support each and every material allegation of the complaint, unless it be that it fails to show that the death of said Byars was due to any negligent act of the defendant, the Alabama Power Company, or if it did tend to show such fact, that it also showed, without conflict, that the contributory negligence of the said Byars proximately contributed to his own death.

The Tuscaloosa Cotton Seed Oil Company owned and operated at the time of the death of said Byars a ginnery at Gordo, Ala.; that James A. Byars was, at the time he was killed, an employee of said cotton seed oil company, doing the work of a common laborer; that the defendant, the Alabama Power Company, was a public utility corporation engaged in the generation, sale, and distribution of electric power in the town of Gordo, and was furnishing the electric power to the said cotton seed oil company to operate its ginnery; that this electric energy was transmitted to said ginnery by means of wires *erected* and *maintained by the defendant;* that the wires entered the main building near the lower borders of the roof, and were strung approximately four feet above the roof on the engine room; that deceased was at work on the roof of the engine room at the time he met his death by electrocution; that the deceased was in the discharge of his duties on the roof with another laborer sweeping off lint cotton at the time he was killed by coming in contact with the electric wires. These wires were at the time charged with a heavy and deadly voltage of electricity. No one saw the accident.

Dick Bailey, the only man on the roof at the time of the accident, testified in part: "Mr. Byars was working here on this roof (indicating on picture), known as the engine room, and he was sweeping off lint, cotton and stuff like that (the engine room is the shed built on the side of the main building). There were three wires coming into the gin building which ran above the roof on which Mr. Byars was working, and I was up there with my back turned to Mr. Byars, when I heard some kind of dreadful noise. About that time he hit the floor (roof). I turned and jumped off the building on which I was working and took hold of Mr. Byars. He didn't say anything. I went over across the gin house and hollered for help, and about that time Dr. J. L. Davis came up the ladder. We turned Mr. Byars over and there were a couple of charred places on his finger and thumb, I think of the right hand. The thumb was burned to the bone. The wire above Mr. Byars was stripped of cotton a short piece of from eighteen inches to three feet and there was cotton lint on the wires except at the place where it looked like it had been stripped off. Other members of the crew and I clean up about the gin about once a week, and on the morning Mr. Byars was killed, we were ordered to clean up about the gin, and Mr. Byars and I were engaged in that work at the time he was killed. Quite a bit of lint cotton accumulates on the roof, the wires and other places and there were little strings of lint cotton hanging on the wires and the wires looked like they had been stripped with a broom or hand, and there was a naked place on one wire where it had been cleaned somewhere from eighteen inches to three feet, and the insulation was off of this wire at that point and I could see the copper part of the wire, and the cotton was stripped up to where the insulation was off of this wire, and these wires looked like old wires and were saggy."

The room was constructed of corrugated iron. There was testimony also tending to show that there was more than one burned place on the edge of the roof where the wire had touched the roof and that these burned places in the roof were just above the place on the wire which was bare. The wires were approximately "waist high" above the roof on which Mr. Byars was when killed.

The testimony further tended to show that the deceased was an unskilled laborer, and had worked only a few weeks for the Tuscaloosa Cotton Seed Oil Company.

Mr. Sam Davis, a witness for plaintiff, and who was manager of the gin plant, testified in part: "I saw Mr. Byars while he was dead on the roof, and I went there as soon as I heard the alarm. Dr. Davis was there when I got there. I examined the wires across the top of the roof that day and observed that the wires were old and the insulation broken in places, and the wires were rather loose from the post to the connection at the house." This witness further testified that "the Alabama Power Company owned these wires that led from the post to the side of the gin house, and these wires, including the naked place on the wire where the insulation was off, were a part of the Alabama Power Company property and plant at Gordo at the time Mr. Byars was killed. * * * The gin at Gordo was operated by electric power, and these wires supplied the electricity to operate the gin, and were so supplying this electricity at the time Mr. Byars was killed."

This witness further testified that he had never cautioned the said Byars about the danger of coming in contact with the wires.

Dr. L. C. Davis, who reached deceased shortly after the accident, testified that the deceased was electrocuted; that he found a burn on his thumb and first finger of one of his hands; that the burn on his thumb was about a quarter of an inch; that the bottom of his feet were smoky like, but "that there were no burns on his feet; * * * and the burn on the hand was on the inside of the first finger and on the inside of the thumb, so that if the thumb and first finger were pressed together it would place these burns together." And "that there was some lint cotton burnt and charred into the tissue of the thumb."

The only witness (Hoyt Free) examined by the defendant testified in part: "That one week before the time he (Byars) was killed, me and him was cleaning the gin, just like they was that morning, and cleaned it all but the wires, and he started to walk up to them, and said, 'We are done all but the wires,' and he started to take ahold of them, that is, to clean them, and I told him that we didn't clean the wires. I asked him did he know just what, how much these wires carried. 'No,' he said, he didn't and I told him it was a 2,300 volt line, and it was really dangerous for us to fool with them, that it was not our job at all, and he says." It does not appear what Byars said.

This witness was not shown to have any control over Byars, or the right to direct his action, or had any superior knowledge.

We have set out the evidence possibly more than was necessary, but we have felt that it was necessary in view of the fact that the court directed a verdict for defendant.

In the case of Birmingham Railway, Light & Power Company v. Canfield, 177 Ala. 422, 59 So. 217, 218, this court said: "Electricity is an illusive, in a degree uncontrollable, and a dangerous, element. The character and nature of the hazard to which, if unguarded, it subjects persons and property, suggests a measure of caution and diligence commensurate with the danger its employment necessarily calls into existence." This characterization of electricity, and the measure of caution and diligence required of those who would employ the dangerous instrumentality was later approved by this court in the case of Birmingham Amusements, Inc., v. Turner, 221 Ala. 242, 128 So. 211.

And this court in the case of Dwight Mfg. Co. v. Word, 200 Ala. 221, 75 So. 979, 982, gave its approval to the following rules of law, with respect to the duties and obligations of those who would engage in the generation of electricity and the distribution of the same:

"1. 'The duty of an electric company, in conveying a current of high potential, to exercise commensurate care under the circumstances, requires it to insulate its wires, and to use reasonable care to keep the same insulated, wherever it may reasonably be anticipated that persons, pursuing business or pleasure, may come in contact therewith. This statement of the rule implies that, in the absence of statute or municipal ordinance, it is not necessary to insulate wires which are so placed that no one could reasonably be expected to come in proximity to them.' Curtis on Law of Electricity, § 510.

"2. 'Insufficient or worn insulation is worse than none, for sometimes it gives an appearance of security when, in fact, it is as dangerous as a bare wire.' Id.

"3. 'The fact that it may be expensive to place a proper insulation upon electric wires is no excuse for a failure to do so.' Id."

These statements of the law were quite recently reaffirmed in the case of Alabama Power Co. v. Cooper, 229 Ala. 318, 156 So. 854.

The evidence in the case before us tended to show that the wires, over which the defendant conveyed its electric current to the ginnery of the Tuscaloosa Cotton Seed Oil Company, and which was used in operating the ginnery, were old, and the insulation was broken, thereby rendering the same dangerous to the life of any person who might come in contact with the wire at such point.

■ The wires were strung over, and within four feet of the top of the metal roof on the engine room, and the defendant should have anticipated that at times persons would be upon the roof, either to repair it, or for other needful purposes. The evidence, in fact, shows that employees were sent, from time to time, upon this roof to clear it of lint cotton, which would fall and lodge upon it. In view of this fact, it was the duty of the defendant to maintain its wire in proper condition, and see to it that this dangerous agency was properly insulated. Its failure to keep the wires properly insulated was negligence, for which it would be answerable to any person, who was rightfully upon the roof, and was injured thereby.

Whether the injured person was guilty of contributory negligence, which would bar his recovery, would present another question.

■ In view of the evidence in the record, it was clearly open to the jury to find that defendant was guilty of actionable negligence in not keeping its wires properly insulated. Dwight Mfg. Co. v. Word, supra; Alabama Power Co. v. Capps, 230 Ala. 263, 160 So. 685; Birmingham Railway, Light & Power Co. v. Canfield, supra; Alabama Power Co. v. Cooper, 229 Ala. 318, 156 So. 854. As to this issue, the defendant was certainly not entitled to the general charge.

■ Was the evidence, on the issue of contributory negligence, such as to warrant a directed verdict, or to warrant the general charge for the defendant, with hypothesis? We think not.

Under no reasonable view of the evidence, under the rules stated heretofore in this opinion, was the defendant entitled to a directed verdict, and in so charging the jury the court committed reversible error.

The only evidence found in the record, as we see it, which could be pointed to as justifying the general charge, with hypothesis, is that given by the witness Hoyt Free, who testified that one week before the fatal accident, when he and deceased were cleaning the ginnery, he told the deceased that the wires in question carried 2300 voltage, and that it was "really" dangerous to fool with them, and that it was not their job.

If it be considered that this admonition was sufficient to charge the deceased with knowledge of the danger incident to coming in contact with the wires, it by no means follows, as a matter of law, that, because the deceased did thereafter come in contact with the wires, he was guilty of such contributory negligence as would bar this suit.

No one saw the accident, and no one has attempted to testify just how it happened. There are inferences, it is true, which may be drawn from the evidence, that the deceased was in the act of taking lint cotton from the wires when he received his fatal shock, but whether this was the case or not was a question for the jury.

At best, the evidence relied upon by defendant, to establish contributory negligence went no further than to show that the deceased had been told by a fellow employee a week before the accident that the wires carried 2300 voltage of electricity, and that it was really dangerous to fool with them. He had not been warned or cautioned by the superintendent of any such danger.

If it should be assumed that this information from a fellow employee was sufficient to establish knowledge of the high potential, and that it was dangerous to fool with the wires, the question of contributory negligence of deceased still remained for the jury.

In 20 R.C.L. page 111, § 97, it is said by the author: "When, however, the specific evidence submitted only goes to the extent of establishing knowledge of the defect, the question of his contributory negligence should not be withdrawn from the jury. Indeed, it can only be in rare cases if ever that the question becomes one of law."

And this court in the case of Walker County v. Davis, 221 Ala. 195, 128 So. 144, 147, in speaking to the question of knowledge of the physical condition, observed: "It is often said that from the fact that plaintiff had knowledge of the

physical condition, it does not necessarily follow that he appreciated the danger, and that there must either be an appreciation of the danger, or an opportunity to do so and negligence in that respect. 20 R.C.L. 110, 111. It is sometimes said that the appreciation of the danger may be actual or imputed. 45 C.J. 946. And the negligence may consist in the failure to appreciate the danger when there is opportunity and knowledge sufficient to stimulate reasonable care in that respect. Dwight Mfg. Co. v. Word, 200 Ala. 221, 75 So. 979; 45 C.J. 947. *Mere knowledge of the defect* is not sufficient as a matter of law. There must also be the element of want of due care. 20 R.C.L. 111; Birmingham v. Gordon, 167 Ala. 334, 52 So. 430; Montgomery v. Ross, supra [195 Ala. 362, 70 So. 634]." Italics supplied.

The question of the deceased's contributory negligence should have been submitted to the jury under proper instructions from the court. The evidence did not warrant the general affirmative charge for the defendant on that issue, and it is also certain that the defendant was not entitled to such a charge on the evidence as to its initial negligence.

It follows that the judgment of the circuit court must be reversed and the cause remanded for new trial in conformity to the opinion here announced. The case being properly reviewable 'on appeal, it becomes unnecessary to discuss the same questions presented on petition for certiorari.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.