181 So. 270

ALABAMA POWER CO. v. BYARS et al.

6 Div. 254.

Supreme Court of Alabama.

May 12, 1938.

80

V. W. Elmore, of Gordo, and Jones & Dominick and A. Bruce McEachin, all of Tuscaloosa, for appellees.

McQueen, McQueen, & McQueen, of Tuscaloosa, D. D. Patton, of Carrollton, and Martin, Turner & McWhorter and J. C. Blakey, all of Birmingham, for appellant.

KNIGHT, Justice.

This is the second appeal in this cause. The opinion of the court on first appeal is found in Byars v. Alabama Power Co., 233 Ala. 533, 172 So. 621.

The principles of law applicable to the case may be found fully stated in our former opinion.

The facts developed on the second trial are not materially different from the facts found in the record on the first appeal. Without restating them, we deem it sufficient, for the purpose of a decision of this case, to refer to the opinion on the former appeal, where a full statement of the evidence may be found.

However, the appellant insists that the evidence upon the second trial was "so substantially and materially different from that introduced upon the first trial" that it was entitled to the general affirmative charge, which it duly requested in writing. The appellant's contention in this respect is that on the second trial there was *"no evidence"* having any probative value whatever that appellant was in any way connected with the installation or maintenance of the electric wires which are alleged to have been the offending agency which caused Byars' death. In this appellant is mistaken. The witness Sam Davis, who alone testified to the ownership of the wires, and who was the general manager of the Tuscaloosa Cotton Seed Oil Company at Gordo, in Pickens county, Ala., testified on his direct examination: "These wires from the post, leading across the shed where Mr. Byars was killed, and the post and the wires which were connected to the post out from the building, were installed and owned and operated by the Alabama Power Company. Alabama Power Company owns the wires from the post to and up to where it was joined to the side of the gin house. These wires were furnished by the Power Company."

On cross-examination by the defendant, this witness Davis testified: "I became Manager of the Gordo Gin of the Tuscaloosa Cotton Seed Oil Company in 1930. I never worked there prior to that time. The first time I worked there was in 1930. The wires that ran from the pole to the side of the gin building that I testified about, they were installed there and were there at the time I went to work there. The wires had already been put in at the time I went to work there. * * * I don't know how far it was from where the wires attached to the building out to the service pole to which the wires ran. It was thirty or forty feet. I do not know when those wires were installed. I do not know who put them up. I don't know who furnished the wire. That

was all done before I went to the Gordo Gin plant * * * ."

Conceding that there was a conflict in the testimony of the witness Sam Davis given on his direct examination and that given by him on cross-examination, this fact would not warrant the court in disregarding the testimony of the witness. In such case it was for the jury to determine which statement it would believe. Hines, Director General, v. Miniard, 208 Ala. 176, 94 So. 302; Jones v. Bell, 201 Ala. 336, 77 So. 998; McMillan v. Aiken, 205 Ala. 35, 88 So. 135.

It is next insisted that the evidence on the second trial was materially different from that on the first trial, in that the evidence on the last trial showed that a new tin roof had been put on the gin house, and that the tin sheets extended downward some 5 inches more than the old roof. That the tin on the old roof was some 13 inches above the wiring, whereas on the new roof, the tin was only about 8 inches above the wires. That this new roof was put on the building by the Tuscaloosa Cotton Oil Company, and the defendant had no connection with the construction of the new roof. It appears, however, that the new roof was put on some eight months prior to the accident, and it also appears that long after this re-roofing was done, in fact some seven or eight months, an agent of defendant visited the plant, and turned the current in for operating the gin for the season commencing in the fall of 1934. The evidence tended to show that the fuse where the agent of the defendant "cut the electricity in" or turned it on, was on the pole "from which the wires ran into the building." The evidence further tended to show that this agent could see the engine room and wires leading from the pole to the side of the house, and could "see the wires there that went under the new roof." That "they could see the sagging wires from the pole to the side of the house very plainly." This evidence made it clearly a jury question as to *knowledge* by the defendant of the defective condition of the wiring, if actual knowledge of the defect was in reality a material inquiry in the case. But if the wires were in fact installed by the defendant, and were a part of their system in delivering electricity to the gin plant, it was their duty to see that the wires were in safe and proper condition at all times. Byars v. Alabama Power Co., supra.

It is next insisted that the evidence submitted on the second trial was materially different with regard to the warning given the deceased as to the danger of coming into contact with the wires. If there was in fact any material difference in the evidence on the two trials, in this respect, on the last trial it was less favorable to the defendant, for on this last trial the evidence tended to show that the deceased, who was only a common laborer, with no knowledge or experience in the use or control of electricity whatever, did not appreciate the dangers involved in coming in contact with wires, charged with an electric current, under the conditions then and there prevailing. The question of appreciation of the danger, as well as the question of negligence on his part in not appreciating the danger, were questions for the jury under this evidence, and not for the court to assume as a matter of law. Walker County v. Davis, 221 Ala. 195, 128 So. 144, 147; 20 R.C.L. 110, 111.

The negligence of the defendant, as charged in the several counts of the complaint, as well as contributory negligence of the plaintiff, were, under the evidence, jury questions, and, therefore, the defendant was not entitled to the general affirmative charge as to any of the counts of the complaint. Byars v. Alabama Power Co., supra; Walker County v. Davis, supra; Dwight Mfg. Co. v. Word, 200 Ala. 221, 75 So. 979; Birmingham Railway Light & Power Co. v. Canfield, 177 Ala. 422, 59 So. 217, 218; Alabama Power Co. v. Capps, 230 Ala. 263, 160 So. 685; Alabama Power Co. v. Cooper, 229 Ala. 318, 156 So. 854; City of Birmingham v. Gordon, 167 Ala. 334, 52 So. 430.

The evidence in this case has been read and carefully considered, and we fail to find in it any sound reason, which would justify us in reversing the judgment of the trial court for its failure to grant the defendant a new trial, under the rule declared in Cobb v. Malone, 92 Ala. 630, 9 So. 738.

We find no reversible errors in the record, and it results that the judgment of the circuit court is due to be affirmed. · It is so ordered.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.